In The
Court of Appeals
Sixth Appellate District of Texas at Texarkana

______________________________

No. 06-02-00157-CV
______________________________


CONTINENTAL DREDGING, INC., Appellant
 
V.
 
DE-KAIZERED, INC., Appellee


                                              

On Appeal from the 113th Judicial District Court
Harris County, Texas
Trial Court No. 99-39992


                                                 



Before Morriss, C.J., Ross and Carter, JJ.
Opinion by Justice Ross


O P I N I O N

          This appeal involves a contract dispute arising from a dredging operation at a dock
at the port of Houston. De-Kaizered, Inc. hired Continental Dredging, Inc. to dredge to a
uniform depth of thirty-six feet in front of its dock in the Houston ship channel. Continental
sued De-Kaizered to compel payment pursuant to the contract. De-Kaizered alleged
Continental breached the agreement, breached a warranty, denied liability under the
contract, and countersued under the Deceptive Trade Practices Act (DTPA). The jury
awarded Continental contract damages of $123,556.00, offset by $56,485.00 awarded
De-Kaizered under the DTPA for Continental's misrepresentations and $10,000.00
awarded De-Kaizered for Continental's breach of warranty, for a net recovery by
Continental of $57,071.00. Continental was also awarded $49,422.00 in attorney's fees. 
          Continental raises five issues on appeal. It contends the evidence is legally and
factually insufficient to support (1) that Continental engaged in false or deceptive acts or
practices; (2) that any DTPA violation by Continental was a "producing cause" of
De-Kaizered's damages; (3) the damages awarded to De-Kaizered under the DTPA, or
(4) a breach of warranty violation by Continental. In its fifth point of error, Continental
contends that, if the court reverses the DTPA finding, damages awarded under the DTPA
must also be disregarded. 
          De-Kaizered raises four issues in its cross-appeal. It contends (1) Continental's
breach was a material breach as a matter of law; (2) the jury's finding that Continental's
breach was not material is against the great weight and preponderance of the evidence;
(3) the evidence is legally and factually insufficient to support the jury's award of zero
dollars as reasonable and necessary attorney's fees for De-Kaizered; and (4) the trial court
abused its discretion by requiring De-Kaizered to rest its case when its last witness was not
present to testify.
Background Facts
          On April 28, 1998, De-Kaizered hired Continental to dredge to a uniform depth of
thirty-six feet in front of its dock in the Houston ship channel. The dock in question was
owned by De-Kaizered and operated pursuant to a lease by Texas Stevedores. 
De-Kaizered and Texas Stevedores desired to increase the depth around the dock in order
to be able to accommodate vessels requiring up to thirty-six feet of draft. 
          Continental promised to "excavate in front of [De-Kaizered's] dock . . . to meet the
-36 contour in the ship channel (one foot allowable overdepth for pay) at $4.00 (four
dollars) per cubic yard, . . . ." Payment for the dredging was to be "based on a before-and-after survey done by Survey Resources, Inc." Continental commenced work May 4, 1998,
and concluded work June 4, 1998. 
          After Survey Resources, Inc. (SRI) reported the results of its survey, Continental
notified SRI the survey may have been in error. Richard Dorr, an employee of SRI,
returned to the site and determined with a leadline that all of the depths were at or below
minus thirty-six elevation.


 SRI sent its fathometer (a surveying instrument used to
measure depth soundings) to a testing facility and concluded the fathometer had provided
inaccurate but consistent measurements. Dorr testified that, in his opinion, based on the
leadlines and recalibration, Continental met the thirty-six-foot requirement. SRI
recalculated the measurements to provide the correct depth measurements and amount
of spoilage removed. Its amended report was submitted July 6, 1998. That report
determined that 27,882 cubic yards of spoilage was removed by Continental. Continental
tendered an invoice to De-Kaizered, specifying that 27,822


 cubic yards had been
excavated.
          Around the end of June or the beginning of July, 1998, the Eptalofos attempted to
dock at De-Kaizered's dock. The ship's captain and the channel pilot decided the ship
would be taken to another dock, partially unloaded, and then returned to De-Kaizered's
dock. Due to the Eptalofos' inability to dock, De-Kaizered incurred $56,845.00 of
demurrage charges and other expenses. On September 11, 1998, tropical storm
"Frances" hit the Houston ship channel. At some point (whether before or after the tropical
storm is not clear), the Leira and the Normandes attempted to dock, but were
unsuccessful. On October 4, 1998, the Almavita attempted to dock, but was also
unsuccessful. Eventually, the ship channel Pilots Association restricted access to
De-Kaizered's dock to ships requiring thirty-three feet or less. De-Kaizered and Texas
Stevedores undertook additional dredging operations themselves to solve the problem. 
They did so, however, at a location closer to the dock, namely ten feet from the dock. The
terms of Continental's contract only required it to excavate twenty feet from the dock. 
          On August 26, 1998, Continental sent a letter to De-Kaizered demanding payment
and stating it had removed 27,882 cubic yards based on the SRI survey. De-Kaizered
withheld payment, alleging Continental failed to perform its contractual obligations. 
Continental subsequently sued De-Kaizered for breach of contract and suit on account. 
De-Kaizered countersued Continental for DTPA violations and breach of warranty. 
De-Kaizered later joined SRI as a third-party defendant.


 The jury found De-Kaizered
breached its contract with Continental without excuse and awarded damages in the amount
of $123,556.00, attorney's fees in the amount of $49,422.00, and expenses in the amount
of $8,039.34. The jury also awarded Continental $15,000.00 in attorney's fees for any
appeal filed in the court of appeals. While the jury also found Continental had committed
a nonmaterial breach of contract, no question was submitted as to damages incurred by
De-Kaizered. The jury found Continental had violated the DTPA and awarded damages
in the amount of $56,485.00. The jury further found Continental had failed to comply with
a warranty and awarded De-Kaizered $10,000.00. In response to a question on attorney's
fees incurred by De-Kaizered, the jury answered, "$0." On January 25, 2002, the trial court
rendered judgment for Continental in the amount of $57,071.00 (contract damages, offset
by the jury's DTPA award to De-Kaizered) and $49,422.00 in attorney's fees. 
          The evidence is legally insufficient when (a) there is a complete absence of
evidence of a vital fact; (b) the court is barred by rules of law or of evidence from giving
weight to the only evidence offered to prove a vital fact; (c) the evidence offered to prove
a vital fact is no more than a mere scintilla; or (d) the evidence conclusively establishes the
opposite of the vital fact. Uniroyal Goodrich Tire Co. v. Martinez, 977 S.W.2d 328, 334
(Tex. 1998). More than a scintilla of evidence exists when the evidence supporting the
finding, as a whole, rises to a level that would enable reasonable and fair-minded people
to differ in their conclusions. Burroughs Wellcome Co. v. Crye, 907 S.W.2d 497, 499 (Tex.
1995). When deciding a no-evidence point, we must consider all the evidence in the
record in the light most favorable to the party in whose favor the verdict has been rendered.
Merrell Dow Pharms., Inc. v. Havner, 953 S.W.2d 706, 711 (Tex. 1997).
          If we find some probative evidence, we will test the factual sufficiency of that
evidence by examining the entire record to determine whether the finding is clearly wrong
and unjust. When considering a factual sufficiency challenge to a jury's verdict, a court of
appeals must consider and weigh all of the evidence, not just that evidence which supports
the verdict. Mar. Overseas Corp. v. Ellis, 971 S.W.2d 402, 406-07 (Tex. 1998). A court
of appeals can set aside the verdict only if it is so contrary to the overwhelming weight of
the evidence that the verdict is clearly wrong and unjust. Id. at 407; Cain v. Bain, 709
S.W.2d 175, 176 (Tex. 1986). The court of appeals is not a fact-finder. Accordingly, the
court of appeals may not pass on the witnesses' credibility or substitute its judgment for
that of the fact-finder, even if the evidence would clearly support a different result. Mar.
Overseas Corp., 971 S.W.2d at 407. We do not pass on the credibility of the witnesses,
and we do not substitute our opinion for the trier of fact, even if there is conflicting evidence
on which a different conclusion could be supported. Clancy v. Zale Corp., 705 S.W.2d
820, 826 (Tex. App.‒Dallas 1986, writ ref'd n.r.e.).
          The elements of a DTPA misrepresentation claim are: "(1) the plaintiff is a
consumer, (2) the defendant engaged in false, misleading, or deceptive acts, and (3) these
acts constituted a producing cause of the consumer's damages." Doe v. Boys Clubs of
Greater Dallas, Inc., 907 S.W.2d 472, 478 (Tex. 1995). The Texas Supreme Court has
held that the DTPA should be liberally construed to protect consumers from deceptive
business practices. Miller v. Keyser, 90 S.W.3d 712, 715 (Tex. 2002).
Legal and Factual Sufficiency of False or Deceptive Acts or Practices
          Continental contends the evidence is both legally and factually insufficient to support
the jury's finding that it violated the DTPA. The DTPA provides a cause of action arising
out of use of "false, misleading, or deceptive" acts or practices in the conduct of any trade
or commerce. See Tex. Bus. & Com. Code Ann. § 17.41, et seq. (Vernon 2002). 
          Jury question number 7 asked:
Did Continental Dredging, Inc. engage in any false, misleading, or
deceptive act or practice that was a producing cause of damages to
De-Kaizered, Inc.?
 
"False, misleading or deceptive act or practice" means any of the
following:
 
(1)Representing that services have sponsorship, approval,
characteristics, ingredients, uses, benefits, or quantities
which they do not have; 
 
(2)Representing that goods or services are of a particular
standard, quality or grade, or that goods are of a
particular style or model, if they are of another; or
 
(3)Representing that work or services have been
performed on, or parts replaced in, goods when the
work or services were not performed or parts replaced. 
          The three definitions of false, misleading, or deceptive acts are derived from
Sections 17.46(b)(5), (b)(7), and (b)(22) of the DTPA. See Tex. Bus. & Com. Code Ann.
§ 17.46(b). The jury answered "Yes" to the question. Continental contends insufficient
evidence exists to support any of the three definitions for a "false, misleading, or deceptive"
act.


 
          Continental contends the only representation it made concerning the work was that
it had removed spoilage in the amount of 27,882 cubic yards as determined by the SRI
survey. Continental contends that, because it made no false, misleading, or deceptive
representations, it cannot be held liable under the DTPA. Further, Continental contends a
finding of a DTPA violation is against the great weight and preponderance of the evidence
because the evidence "indicates that Continental performed fully under the terms of the
contract with De-Kaizered based on the survey conducted by De-Kaizered's own surveyor,
SRI." 
          De-Kaizered responds that Continental's assertion it had dredged in front of the dock
to a depth of thirty-six feet was a misrepresentation. De-Kaizered contends Continental
made this misrepresentation in the August 26, 1998, letter which demanded payment for
the dredging. In that letter, however, Continental did not explicitly represent that it had
dredged to a depth of thirty-six feet or that it had fully performed the contract.


 
          De-Kaizered, on the other hand, contends that Andy Walton, president of Texas
Stevedores, testified Continental employees had represented to him they had dredged to
a depth of thirty-six feet. However, Walton's testimony was not as certain as De-Kaizered
contends. When asked if Continental informed him whether it achieved the depth of thirty-six feet, Walton testified: "I believe so. I don't think they would have quit unless they had
achieved 36 feet in depth." 
          A mere breach of contract alone is not sufficient to be a false, misleading, or
deceptive act under the DTPA. Rocky Mountain Helicopters, Inc. v. Lubbock County Hosp.
Dist., 987 S.W.2d 50, 53 (Tex. 1998); Crawford v. Ace Sign, Inc., 917 S.W.2d 12, 14 (Tex.
1996). If the cause of action arises out of the failure to fulfill a promise, the injury is
governed by contract law, not the DTPA. Crawford, 917 S.W.2d at 14-15. "The
determination of whether a breach of contract rises to the level of a misrepresentation
sufficient to trigger the DTPA is a fact-driven inquiry." Munawar v. Cadle Co., 2 S.W.3d 12,
18 (Tex. App.‒Corpus Christi 1999, no pet.); Chilton Ins. Co. v. Pate & Pate Enters., Inc.,
930 S.W.2d 877, 890 (Tex. App.‒San Antonio 1996, writ denied). "Whether the facts, once
ascertained, constitute a DTPA misrepresentation is a question of law." Munawar,
2 S.W.3d at 18. "The nature of the injury most often determines which duty or duties are
breached. When the injury is only the economic loss to the subject of a contract itself the
action sounds in contract alone." Bekins Moving & Storage Co. v. Williams, 947 S.W.2d
568, 577 (Tex. App.‒Texarkana 1997, no pet.) (quoting Southwestern Bell Tel. Co. v.
DeLanney, 809 S.W.2d 493, 495 (Tex. 1991)). This Court has recognized that
misrepresentations "outside the contract" may be a violation of the DTPA despite only
economic loss. Bekins, 947 S.W.2d at 578. In Bekins, we held that misrepresentations
made by a moving company that it would use different methods than those actually used
was actionable under the DTPA. Id. Our decision rested on the fact the representations
were made outside the contract. Id. All of Continental's representations, however, occurred
inside the bounds of the contract. The most misleading statement Continental is accused
of making is that the contract had been completed when it allegedly had not been. As such,
Continental's misrepresentations gave rise only to a breach of contract, not a DTPA
violation for a false, misleading, or deceptive act. We sustain Continental's contention.
Legal and Factual Sufficiency of the "Producing Cause"
and the Damages Awarded to De-Kaizered under the DTPA
 
          Continental contends the evidence is legally and factually insufficient to support the
jury's finding that its alleged misrepresentations were a producing cause of the injury. 
Continental also contends the evidence is legally and factually insufficient to support the
damages awarded to De-Kaizered under the DTPA. Because we have found Continental
did not make false, misleading, or deceptive acts in violation of the DTPA, it is not
necessary to address these points of error.
Legal and Factual Sufficiency of the Breach of Warranty
          Continental contends the evidence is insufficient to support the jury's finding of a
breach of warranty. Continental claims it performed fully under the contract and performed
its work in conformance with the standards in the trade. Continental contends that, because
De-Kaizered hired SRI, "De-Kaizered implicitly declared that SRI was an entity capable of
judging Continental's work." Since SRI concluded that the dredging had been performed
adequately, Continental asserts it is not liable. Continental further argues it made no
guarantee regarding the duration of the finished product and was therefore under no
obligation to repair the damage caused by the tropical storm.


 
          De-Kaizered responds that SRI was hired to determine the amount of spoilage that
had been removed, not the quality of the work or depth of the dredging. De-Kaizered
argues there is "ample support in the record that Continental failed to dredge to a uniform
depth of 36 feet . . . ." and points to the inability of certain ships to dock as proof.
          The DTPA provides a cause of action when the cause of the damages is a breach
of implied warranty. Tex. Bus. & Com. Code Ann. § 17.50(a)(2). This is a separate cause
of action from the laundry list of misrepresentations under Section 17.50(a)(1). See Tex.
Bus. & Com. Code Ann. § 17.50. The DTPA "does not create any warranties; therefore any
warranty must be established independently of the act." La Sara Grain Co. v. First Nat'l
Bank, 673 S.W.2d 558, 565 (Tex. 1984). An implied warranty is derived from either statute
or from common law. Id. The Texas Supreme Court has held that breach of an implied
warranty to repair or modify goods or property in a "good and workmanlike manner" is
actionable under the DTPA. Melody Home Mfg. Co. v. Barnes, 741 S.W.2d 349, 354 (Tex.
1987) (recognizing the implied warranty in construction accompanied by a home sale). A
contract may create duties in both contract and tort. Bekins, 947 S.W.2d at 577. "Implied
warranties are created by operation of law and are grounded more in tort than in contract." 
La Sara Grain Co., 673 S.W.2d at 565. Because implied warranties are grounded more in
tort, and because the DTPA expressly recognizes breach of an implied warranty as a
separate violation from misrepresentations, Continental may have violated the DTPA if it
breached an implied warranty, despite not making any actionable misrepresentations
outside the contract.
          The Texas Supreme Court has defined "good and workmanlike manner" as the
"quality of work performed by one who has the knowledge, training, or experience
necessary for the successful practice of a trade or occupation and performed in a manner
generally considered proficient by those capable of judging such work." Parkway Co. v.
Woodruff, 901 S.W.2d 434, 446 (Tex. 1995); Melody Home Mfg. Co., 741 S.W.2d at 354. 
The implied warranty of "good and workmanlike manner" serves as a "gap-filler" or "default
warranty" if the parties do not agree to another standard for the manner, performance, or
quality. Centex Homes v. Buecher, 95 S.W.3d 266, 273 (Tex. 2002) (although warranty
cannot be disclaimed, parties can agree to another standard for manner, performance, or
quality). The implied warranty under the contract at issue required Continental to perform
in a manner generally considered proficient by one with knowledge, training, or experience
in the trade. 
          De-Kaizered argues that Continental's failure to complete the work it was required
to perform resulted in a breach of warranty. Texas courts have held that failure to complete
work required to be performed under contract is a breach of the warranty of "good and
workmanlike manner." LaBella v. Charlie Thomas, Inc., 942 S.W.2d 127, 135 (Tex.
App.‒Amarillo 1997, writ denied) (appellant's allegation car repairs were not performed in
good and workmanlike manner actionable under DTPA when repairs undertaken, but not
completed); Melody Home Mfg. Co., 741 S.W.2d at 354 (failure to connect washing
machine drain sufficient evidence to support breach of warranty). If Continental failed to
complete the work a contractor considered generally proficient in the trade would have
completed, it violated the DTPA under the breach of implied warranty provision.
          Sufficient evidence exists to support a conclusion Continental did not dredge to a
depth of thirty-six feet. The jury found Continental breached the contract. The only basis
argued for that breach was the failure to dredge to thirty-six feet. Walton testified that 
Texas Stevedores scheduled ships requiring a depth of thirty-six feet which could not dock.


 
This is some evidence of failure to dredge to thirty-six feet when viewed in the light most
favorable to the party in whose favor the verdict was rendered. Further, when viewed
neutrally, we cannot say the great weight and preponderance of the evidence indicates
Continental did dredge down to thirty-six feet. Because sufficient evidence indicates
Continental failed to perform the dredging in a good and workmanlike manner, there is
sufficient evidence to support the jury's finding that Continental breached an implied
warranty.



          Continental offers the alternative argument that the tropical storm "Frances" broke
the causal chain, relieving it of any liability for demurrage costs. Of the four ships that had
problems docking, only the Almavita was, by the great weight and preponderance of the
evidence, shown to have attempted to approach De-Kaizered's dock after the storm. The
evidence is unclear as to when the Leira or the Normandes attempted to dock. Producing
cause under the DTPA requires an unbroken causal connection between the allegedly
deceptive act and the actual damages suffered. See Boys Clubs of Greater Dallas, Inc.,
907 S.W.2d at 481. An intervening cause may preclude recovery under the DTPA. See
Dubow v. Dragon, 746 S.W.2d 857, 860 (Tex. App.‒Dallas 1988, no writ). Even assuming
the tropical storm "Frances" occurred September 11, 2001, no evidence was introduced to
prove this tropical storm actually caused silt to accumulate in the channel. There was
testimony that tropical storms do cause silt accumulation. However, no evidence was
introduced that the tropical storm "Frances" actually did cause silt to accumulate in the
relevant portion of the channel. Due to the lack of evidence, we hold that the great weight
and preponderance of the evidence does not show that the tropical storm "Frances" broke
the causal chain.
          Continental also argues that the evidence of breach of warranty damages is legally
and factually insufficient because the additional dredging undertaken by De-Kaizered and
Texas Stevedores was more extensive than that required under the contract, and there was
no segregating of the costs for these two operations. De-Kaizered produced evidence of
unsegregated costs associated with the remedial dredging of close to $60,000.00. 
          In resolving legal sufficiency of the evidence to support damages, a jury's finding will
be upheld if it is within the range of the testimony regarding the amount of damages
incurred. State Farm Fire & Cas. Co. v. Rodriguez, 88 S.W.3d 313, 321 (Tex. App.‒San
Antonio 2002, pet. denied). While it is true De-Kaizered could only recover based on the
"benefit-of-the-bargain" standard, the unsegregated dredging costs are some evidence of
the segregated dredging costs. In the context of attorney's fees, the Texas Supreme Court
has held that evidence of unsegregated fees is more than a scintilla of evidence of the
segregated fees. Stewart Title Guar. Co. v. Sterling, 822 S.W.2d 1, 12 (Tex. 1991). 
Although the court in Stewart Title went on to hold that a remand of the attorney's fee issue
was therefore appropriate, we hold that a remand of De-Kaizered's breach of warranty
damages is not appropriate because, in addition to the unsegregated dredging costs,
De-Kaizered introduced evidence of demurrage costs of around $90,000.00. The jury
awarded $10,000.00 for Continental's breach of warranty. This sum was within the range
of the testimony regarding these damages, and we cannot say the great weight and
preponderance of the evidence indicates this award was improper. Therefore, legally and
factually sufficient evidence exists to support the jury's award.
Whether Damages Awarded under the DTPA must be Disregarded
          Continental argues that, if we hold the DTPA award was in error, we cannot uphold
the award of $56,485.00 under the theory of breach of contract. Although the jury found
Continental breached its contract with De-Kaizered, no jury question was submitted
concerning De-Kaizered's damages based on the breach of contract theory. De-Kaizered
argues that, because the damages would have been the same under the breach of contract
theory as the DTPA, we should uphold the award under breach of contract.
          De-Kaizered cites Z.A.O., Inc. v. Yarbrough Drive Ctr. Joint Venture, 50 S.W.3d 531,
549 (Tex. App.‒El Paso 2001, no pet.), for the proposition that the damages awarded under
a theory that is later invalidated can be affirmed under another theory if the measure of
damages under the second theory is the same as the measure of damages under the first. 
The court held that, even though they invalidated the tort theories, the damages could be
affirmed based on the jury's finding of a breach of contract. Id. The court based its decision
in Z.A.O. on a similar holding by the Corpus Christi Court of Appeals in Auto. Ins. Co. v.
Davila, 805 S.W.2d 897, 903 (Tex. App.‒Corpus Christi 1991, writ denied), overruled on
other grounds, Hines v. Hash, 843 S.W.2d 464 (Tex. 1993). The court in Davila held that
damages could still be affirmed under breach of contract even though the DTPA theory was
invalidated. Id.
          Both Davila and Z.A.O. are distinguishable from the current situation because they
involved broad-form submission of the damages issues. In both cases, the jury returned
favorable findings on multiple theories of liability and assigned damages based on a single
broad-form question. Z.A.O., Inc., 50 S.W.3d at 538; Davila, 805 S.W.2d at 902-03. In the
current suit, the damages question was submitted to a jury on the specific basis of damages
under the DTPA. Further, the damages under the DTPA are based on the alleged
misrepresentations made by Continental, not on the breach of contract. Damages based
solely on breach of contract are not actionable under the DTPA. Crawford, 917 S.W.2d at
14. The damages awarded, therefore, under the DTPA cannot be awarded under the
finding of breach of contract since the jury question was specific to the DTPA, and
De-Kaizered failed to request a jury question on the breach of contract damages. 
Continental's contention is sustained.
Whether Continental's Breach was a Material Breach as a Matter of Law
          De-Kaizered contends Continental materially breached the contract as a matter of
law because legally and factually sufficient evidence exists to support the jury's finding that
Continental failed to dredge to a depth of thirty-six feet in front of the dock. Therefore,
De-Kaizered claims it is excused from payment under the contract.
          Continental responds that, since De-Kaizered failed to submit a jury question
regarding material breach, De-Kaizered waived the issue for appeal. However, the jury
found in its answer to question 2 that De-Kaizered was not excused from its failure to pay
under the contract by Continental's "previous failure to comply with a material obligation of
the same agreement." By so finding, the jury implicitly found there was no material breach
by Continental. Continental further argues there is no finding on whether Continental failed
to dredge to a depth of thirty-six feet. 
          While there is no explicit finding on whether Continental dredged to thirty-six feet, the
jury did find Continental breached the contract. Since the only theory proposed and argued
for the breach of contract claim was failure to dredge to thirty-six feet, the jury implicitly held
Continental failed to dredge to a depth of thirty-six feet. 
          Because the contract at issue involved a sale of services, the common law applies.
In the context of construction contracts, the standard for whether a breach of contract
excuses performance by the other party has long been whether there was "substantial
performance." Turner, Collie & Braden, Inc. v. Brookhollow, Inc., 642 S.W.2d 160, 164
(Tex. 1982). "Substantial performance" means:
[T]he contractor must have in good faith intended to comply with the contract,
and shall have substantially done so in the sense that the defects are not
pervasive, do not constitute a deviation from the general plan contemplated
for the work, and are not so essential that the object of the parties in making
the contract and its purpose cannot, without difficulty, be accomplished by
remedying them.
 
Id. (quoting Atkinson v. Jackson Bros., 270 S.W. 848, 851 (Tex. Comm'n App. 1925,
holding approved)). The "substantial performance" test has also been expanded beyond
construction contracts. Geotech Energy Corp. v. Gulf States Telecomms. & Info. Sys., Inc.,
788 S.W.2d 386, 390 (Tex. App.‒Houston [14th Dist.] 1990, no writ). If there is a material
breach of the contract, the contract has not been substantially performed. Patel v.
Ambassador Drycleaning & Laundry Co., 86 S.W.3d 304, 309 (Tex. App.‒Eastland 2002,
no pet.). 
          In Hernandez v. Gulf Group Lloyds, 875 S.W.2d 691, 693 (Tex. 1994), the Texas
Supreme Court quoted five factors from the Second Restatement of Contracts used by
courts to determine materiality of the breach. Id. at 693 & n.2. These factors are: 1) the
extent to which the nonbreaching party will be deprived of the benefit that it could have
reasonably anticipated from full performance; 2) the extent to which the injured party can
be adequately compensated for the part of the benefit of which he or she will be deprived;
3) the extent to which the party failing to perform will suffer forfeiture; 4) the likelihood that
the party failing to perform will cure his or her failure, taking into account all the
circumstances, including reasonable assurances; and 5) the extent to which the behavior
of the party failing to perform or to offer to perform comports with the standards of good
faith and fair dealing. Id.
          Whether a party's breach of contract is so material as to render the contract
unenforceable is a question of fact to be determined by the trier of fact. Hudson v.
Wakefield, 645 S.W.2d 427, 430 (Tex. 1983); Driver Pipeline Co. v. Mustang Pipeline Co.,
69 S.W.3d 779, 789 (Tex. App.‒Texarkana 2002, pet. filed). The SRI survey indicating
Continental dredged close to thirty-six feet is some evidence supporting the finding the
breach was not material, based on the factor of the extent the nonbreaching party will be
deprived of the benefit it could have reasonably anticipated from full performance. Further,
there is overwhelming evidence Continental acted in good faith by relying on SRI's
conclusion the contract had been performed, as well as their own tests with leadline
weights. Because there is more than a scintilla of evidence supporting the jury's implied
conclusion Continental substantially performed the contract, Continental did not materially
breach the contract as a matter of law. De-Kaizered's contention is overruled.
Factual Sufficiency of the Jury's Finding that 
Continental's Breach was not Material
 
          De-Kaizered contends the evidence is factually insufficient to support the jury's
finding that De-Kaizered's performance was not excused by Continental's failure to comply
with a material obligation of the contract. "In a contract action based upon substantial
performance, the party seeking relief under the doctrine bears the burden of proving that
he did substantially perform in accordance with the agreement." Patel, 86 S.W.3d at 307. 
If there is a material breach of the contract, the contract has not been substantially
performed. Id. at 309. 
          The first factor under Hernandez is the extent the nonbreaching party was deprived
of the benefit expected under the contract. Hernandez, 875 S.W.2d at 693. De-Kaizered
argues it "would have gotten what it bargained for only if Continental achieved the depth
specified in the contract." However, the question is not whether De-Kaizered received
exactly that for which it bargained, but rather the extent it was deprived of that for which it
had bargained. The term substantial performance always means something less than full
and exact performance of the contract. 8 Corbin on Contracts § 36.3 (2003). The
channel was deepened approximately ten feet, from around twenty-five feet to around thirty-five or thirty-six feet. The SRI survey and testimony concerning the leadline tests all
indicate Continental dredged close to‒if not actually‒thirty-six feet. Further, the fact that the
ship channel Pilots Association restricted access to De-Kaizered's dock to ships requiring
thirty-three feet or less shows that, even though ships of thirty-six-foot draft could not dock,
ships of considerably greater draft could dock than before Continental's dredging. 
Generally, "[t]he ratio between what was left unperformed and the total performance
promised will frequently be decisive." 8 Corbin on Contracts § 36.6 (2003). While in this
case the ratio is not easy to state in mathematical terms, it is clear Continental performed
substantially close to the contract terms. Therefore, De-Kaizered received substantially
close to that for which it had bargained.
          An examination of the other factors also indicates there was factually sufficient
evidence to support a conclusion there was no material breach. Because De-Kaizered
could have collected under contract law for both the costs of completing the dredging to the
contract specifications, and the damages incurred due to the alleged breach, De-Kaizered
could have been adequately compensated for the benefit of which it was deprived. If
De-Kaizered is excused from performance, Continental will suffer considerable forfeiture. 
Further, all circumstances indicate Continental acted in good faith in concluding it had
completed the contract. While De-Kaizered argues that Continental's refusal to cure should
be persuasive, we are not persuaded. De-Kaizered provided Continental with no
assurances payment would be made if it cured. Further, all the other factors indicate there
was no material breach. 
          The great weight and preponderance of the evidence does not indicate Continental
failed to meet its burden of proving substantial performance. The evidence, therefore, is
factually sufficient to support the jury's finding. De-Kaizered's contention to the contrary is
overruled.
Legal and Factual Sufficiency of the Jury's Award of
Zero Dollars as Attorney's Fees
 
          De-Kaizered contends insufficient evidence exists to support the jury's award of zero
dollars as reasonable and necessary attorney's fees under the DTPA.


 De-Kaizered argues
that attorney's fees are mandatory and that it conclusively established attorney's fees in the
amount of $36,849.50 and costs in the amount of $2,238.31.


 
          Continental responds that the determination of the amount reasonable for attorney's
fees is within the sole province of the jury. Because De-Kaizered failed to segregate the
attorney's fees attributable to the DTPA claim from the attorney's fees attributable to the
breach of contract and the suit against a third party, Continental contends De-Kaizered's
failure to segregate resulted in no evidence presented to the jury as to the reasonable fees
associated solely with the DTPA claim.
          If a prevailing party recovers damages, attorney's fees for a violation of the DTPA are
mandatory. Tex. Bus. & Com. Code Ann. § 17.50; see Bocquet v. Herring, 972 S.W.2d 19,
20 (Tex. 1998); Green Int'l, Inc. v. Solis, 951 S.W.2d 384, 390 (Tex. 1997); Joseph v. PPG
Indus., Inc., 674 S.W.2d 862, 867 (Tex. App.‒Austin 1984, writ ref'd n.r.e.). While only a
prevailing party may recover under Section 17.50, net recovery in the overall suit is not
required. McKinley v. Drozd, 685 S.W.2d 7, 9 (Tex. 1985). 
          The party seeking to recover attorney's fees carries the burden of proof to establish
the amount which is reasonable and necessary. Stewart Title Guar. Co. v. Sterling, 822
S.W.2d 1, 11 (Tex. 1991). "In order to show the reasonableness and necessity of attorney's
fees, the plaintiff is required to show that the fees were incurred while suing the defendant
sought to be charged with the fees on a claim which allows recovery of such fees." Id. at
10. The general rule is that attorney's fees attributable to other defendants and other
causes of action must be segregated. See id. at 10-11; Schlager v. Clements, 939 S.W.2d
183, 191-92 (Tex. App.‒Houston [14th Dist.] 1996, writ denied). An exception to the general
rule is when the claims are inseparably intertwined.


 However, if a party fails to object to
the fact the attorney's fees are not segregated as to specific claims, then the error is
waived. Green Int'l, Inc., 951 S.W.2d at 389 (citing Hruska v. First State Bank, 747 S.W.2d
783, 785 (Tex. 1988)). Continental failed to object to the admission of the unsegregated
attorney's fees or the charge presented to the jury. Continental therefore waived the issue
as to the segregation of the attorney's fees from the other causes of action.
          The Houston Court of Appeals has recently held:
As a factual matter, a zero award for attorney's fees would have been
proper if the evidence: (1) failed to prove (a) that any attorney's services were
provided; or (b) the value of the services provided; or (2) affirmatively showed
that no attorney's services were needed or that any services provided were
of no value.
 
Cale's Clean Scene Carwash, Inc. v. Hubbard, 76 S.W.3d 784, 787 (Tex. App.‒Houston
[14th Dist.] 2002, no pet.). 
          We agree. However, these factors are not present in the instant case. 
De-Kaizered's attorney, Amit Misra, testified as to the services provided and the value of
those services, and his testimony was not controverted. Uncontroverted testimony by an
interested witness concerning attorney's fees may establish a fact as a matter of law.


 We
find that Misra's uncontroverted opinion testimony established as a matter of law
De-Kaizered's reasonable and necessary attorney's fees as follows: $36,849.50 for trial;
$15,000.00 for appeal to the court of appeals; and $10,000.00 for any appeal to the Texas
Supreme Court. We therefore sustain De-Kaizered's contention that the jury's award of
zero dollars is against the great weight and preponderance of the evidence.
Whether the Trial Court Abused its Discretion 
by Requiring De-Kaizered to Rest its Case
 
          De-Kaizered contends the trial court abused its discretion by forcing De-Kaizered to
rest its case when its final witness had yet to reach the courthouse. De-Kaizered argues
that, if Gerardo Castillo, a land surveyor, had been allowed to testify, he would have
established that Continental only removed 10,912.9 cubic yards of material. De-Kaizered
argues such error resulted in harm because Continental would have only recovered
$43,648.00, rather than $123,556.00, under the contract.
          The record reveals the following colloquy between the trial court and De-Kaizered's
counsel:
 THE COURT: Okay. Call your next witness.
MR. MISRA: Our next witness Mr. Castillo is apparently in route. We
as[k] that the Court allow us some time for –
 
THE COURT: Where is he and why wasn't he here first thing this
morning?
 
MR. MISRA: He is on the west side of town, Your Honor. He will be
here shortly.
 
THE COURT: And my next question: Why wasn't he here at 9:00
o'clock this morning like everybody else was?
 
                     MR. MISRA: Apparently he had some other commitments.
 
THE COURT: Well what is he going to testify to? Would you like to
go check and see if your witness is out in the hallway, if not, when you come
back, we will proceed.
 
Gail, go out in the hallway and call for Mr. Castillo.
 
                     (Bailiff complies)
 
THE BAILIFF: Judge, he is not there.
 
MR. MISRA: He is not.
 
THE COURT: All right. You have another witness to call right now?
 
MR. MISRA: No, Your Honor.
 
THE COURT: All right. You are going to have to rest. The court will
rest for you. All right. Rebuttal by plaintiff?
 
MR. KILLEEN: No, Your Honor. Plaintiff rests.
 
          "The decision to admit evidence rests within the sound discretion of the trial court." 
Manasco v. Ins. Co. of Penn., 89 S.W.3d 239, 241 (Tex. App.‒Texarkana 2002, no pet.).
"To determine whether a trial court abused its discretion, we must decide whether the trial
court acted without reference to guiding rules or principles; in other words, we determine
whether the act was arbitrary or unreasonable." Id. "We will not conclude the trial court
abused its discretion merely because, in the same circumstances, we would have ruled
differently." Id.
          De-Kaizered argues that the trial court's refusal to grant a short recess was arbitrary
and unreasonable, particularly in light of the fact counsel for Continental did not object to
the proposed recess. Continental responds that, by choosing not to subpoena Castillo,
De-Kaizered chose to accept the consequences of the witness not appearing for trial. 
Further, Continental argues the court did not abuse its discretion because the granting of
the request would have caused unnecessary delay. 
          "The granting of a recess is generally considered to be within the sound discretion
of the trial court." Employers Ins. of Wausau v. Horton, 797 S.W.2d 677, 681 (Tex.
App.‒Texarkana 1990, no writ). The Texas Supreme Court has held that, if parties choose
not to subpoena a witness and "resort to other and less effective and less certain means
of procuring the testimony of material witnesses they must be held to do so at their own risk
and with foreknowledge that they may be put to trial without the benefit of the testimony." 
Fritsch v. J.M. English Truck Line, Inc., 151 Tex. 168, 246 S.W.2d 856, 859 (1952). The
Dallas Court of Civil Appeals has held that failure to grant a recess during trial to await the
arrival of a witness not under subpoena is not an abuse of discretion. Danziger v. Brandes,
457 S.W.2d 146, 148-49 (Tex. Civ. App.‒Dallas 1970, writ ref'd n.r.e.). 
          De-Kaizered failed to provide a persuasive reason why the witness was not present. 
In the absence of a persuasive reason for the witness' absence, the failure to grant
De-Kaizered a recess to await the arrival of its last witness was not an abuse of discretion.
          Even if the trial court's action was an abuse of discretion, the error is harmless. In
order for error to be reversible, the error must be shown to have probably caused the
rendition of an improper judgment. Tex. R. App. P. 44.1. If admitted into evidence, Castillo's
testimony would have focused exclusively on the amount of spoilage removed by
Continental. He concluded Continental only removed 10,912.9 cubic yards of material
rather than the 27,882 cubic yards as calculated by SRI. The contract specified the price
would be determined based on a before and after survey performed by SRI. De-Kaizered
is bound to the terms of the contract. If the SRI survey is inaccurate, De-Kaizered may
have had a cause of action against SRI, but the inaccuracy is irrelevant to the contract
price. Further, Castillo's conclusions were based on methods different from those agreed
on by Continental and De-Kaizered in the contract. All of Castillo's testimony is irrelevant
and, as such, its absence could not have probably caused the rendition of an improper
judgment. 
          De-Kaizered's contention the trial court abused its discretion in forcing it to rest its
case is overruled.
Summary and Conclusion
          In summary, we affirm that part of the judgment awarding Continental contract
damages in the amount of $123,556.00, and the following attorney's fees: $49,422.00 for
trial, $15,000.00 for appeal to the court of appeals, and $10,000.00 for any appeal to the
Texas Supreme Court. We reverse and render the award to De-Kaizered of $56,485.00 for
violation of the DTPA attributable to an alleged false, misleading, or deceptive act or
practice by Continental. We affirm the award to De-Kaizered of $10,000.00 for
Continental's breach of warranty. We reverse the award of zero dollars in attorney's fees
to De-Kaizered and render judgment that De-Kaizered recover from Continental its
attorney's fees as follows: $36,849.50 for trial, $15,000.00 for appeal to the court of
appeals, and $10,000.00 for any appeal to the Texas Supreme Court.
          Accordingly, we affirm the judgment in part and reverse in part, and render judgment
that Continental recover from De-Kaizered the total net sum, including attorney's fees, of
$126,128.50.
 
 
                                                                           Donald R. Ross
                                                                           Justice
 
Date Submitted:      August 27, 2003
Date Decided:         September 26, 2003
 
 
 
 
OPINION ON REHEARING
 
          Continental Dredging, Inc. and De-Kaizered, Inc. have both filed motions for
rehearing. Continental, in its motion, argues De-Kaizered is not entitled to recover on the
breach of contract claim or the breach of implied warranty claim under the DTPA. 
Continental cites Chilton Ins. Co. v. Pate & Pate Enters., Inc., 930 S.W.2d 877, 892 (Tex.
App.‒San Antonio 1996, writ denied), for the proposition that contract warranties are limited
to the terms of the contract. Continental argues there was no implied warranty of "good and
workmanlike manner." However, in Chilton, the contract contained an express warranty in
the contract. Id. at 891. While parties can agree to another standard for the manner,
performance, or quality in an express warranty, an implied warranty applies when there has
been no agreement as to an express warranty. See Centex Homes v. Buecher, 95 S.W.3d
266, 273 (Tex. 2002). Because the contract between Continental and De-Kaizered did not
contain an express warranty, the contract contained an implied warranty of "good and
workmanlike manner." 
          In its motion for rehearing, De-Kaizered requests that we modify our opinion
because: 1) Continental failed to plead and request a jury question regarding substantial
performance, and 2) Continental failed to prove the costs of completing the project, which
is a required element of proof under the doctrine of substantial performance. 
          Both of the issues raised by De-Kaizered concern matters not raised on appeal. In
its original brief to this Court, material breach was the only issue raised by De-Kaizered to
contest Continental's right to recover based on the contract. De-Kaizered only argued that
legally and factually insufficient evidence supported the jury's conclusion that Continental
had not materially breached the contract. As we held in our original opinion, legally and
factually sufficient evidence exists to support the jury's conclusion that Continental did not
materially breach the contract. This is the first time the argument has been made that
Continental failed to plead substantial performance, request a jury question on substantial
performance, and prove the cost of completing the project.
          De-Kaizered made no assertion of these issues before its motion for rehearing, and
the matter cannot be raised at this point in the proceedings. "Rehearing is not an
opportunity to test alternative arguments after finding other arguments unsuccessful." ICM
Mortgage Corp. v. Jacob, 902 S.W.2d 527, 535 (Tex. App.‒El Paso 1994, writ denied) (op.
on reh'g); see Coastal Liquids Transp., L.P. v. Harris County Appraisal Dist., 46 S.W.3d
880, 885 (Tex. 2001); McGuire v. Fed. Deposit Ins. Corp., 561 S.W.2d 213, 216 (Tex. Civ.
App.‒Houston [1st Dist.] 1977, no writ) (op. on reh'g). If De-Kaizered wanted to contest the
elements of substantial performance, other than material breach, the arguments should
have been raised in its original submission and not in its motion for rehearing. Therefore,
the issue of whether Continental failed to plead and prove all the elements of substantial
performance is not before this Court and we will not address it.
          We overrule the motions for rehearing. 
 
 
                                                                Donald R. Ross
                                                                Justice
 
Date:  October 22, 2003