

# IN THE
# TENTH COURT OF APPEALS

### No. 10-12-00182-CV

**WILLIAM J. GONYEA
AND CATHERINE J. GONYEA,**

Appellants

 **v.**

**MIKE KERBY,**

Appellee

**From the 18th District Court
Johnson County, Texas
Trial Court No. C200800530**

## MEMORANDUM OPINION

In two issues, appellants, William J. and Catherine J. Gonyea, challenge the trial court's judgment in favor of appellee, Mike Kerby. Specifically, appellants contend that: (1) the evidence supporting Kerby's breach-of-contract claim is legally insufficient; and (2) the attorney's fees award is improper because Kerby failed to segregate between recoverable and unrecoverable fees. We affirm.

I. BACKGROUND

In 1994, Kerby contracted with appellants to purchase Lots 21 and 22 of the Greenfield Ridge development in Alvarado, Texas. This development consisted of 57.575 acres, and Kerby's lots together comprised 2.262 acres of the development. William drafted two contracts for deed, signed them, and sent them to Kerby to be signed and returned. The parties agreed that Kerby would pay $16,500 for the two lots. Kerby agreed to make a $6,500 down payment and pay off the remaining $10,000 balance in 180 installments with a 10% interest rate, amounting to a monthly payment of $107.47.[1] However, the crux of this dispute pertains to the language in the contracts pertaining to the mineral estate.

A review of the two contracts for deed drafted by William shows that they are different. One of the contracts for deed specifically stated: "NO MINERAL RIGHTS ARE GRANTED ON THIS CONTRACT. ALL MINERAL RIGHTS OWNED BY THE SELLERS WILL BE CONVEYED TO THE PURCHASERS WHEN THIS NOTE HAS BEEN PAID IN FULL." Kerby signed this contract and kept it for his records. The other contract for deed drafted by William, which Kerby signed and returned to William, stated: "NO MINERAL RIGHTS ARE GRANTED ON THIS CONTRACT. NO MINERAL RIGHTS OWNED BY THE SELLERS WILL BE CONVEYED TO THE PURCHASERS WHEN THIS NOTE HAS BEEN PAID IN FULL." The parties agree that the existence of the two contracts for deed, which contain different language, render

---

[1] Testimony at trial revealed that William's original contracts for deed stated that Kerby must make a $6,000 down payment; however, after reviewing the contracts, William later authorized changes to reflect that Kerby make a $6,500 down payment.

their agreement ambiguous. Furthermore, both William and Kerby testified at trial and disagreed about whether the mineral estate was discussed in the course of the contract negotiations.

In January 2008, Kerby noticed oil and gas activity going on around his property. In particular, Kerby testified that oil and gas companies were doing vibration tests and some drilling near his property. Kerby subsequently called William and asked about ownership of the mineral rights to the land. William stated that he owned the mineral rights and that they were not for sale.[2]

At this point, Kerby had not finished making the installment payments on the underlying contracts for deed. On August 6, 2008, William sent Kerby a letter stating that Kerby had completely finished making the installment payments on the underlying contract and that William would send Kerby a warranty deed for the lots shortly. On August 13, 2008, William sent Kerby the warranty deed for the lots. In the deed, William included the following exception to the warranty: "No oil, gas, and mineral rights are conveyed with this Warranty Deed. This Warranty Deed conveys surface and surface rights only as mineral rights have been retained by the Grantor." This deed was subsequently recorded in the Official Public Records of Johnson County, Texas.

---

[2] The testimony shows that appellants entered into an oil and gas lease covering the entire development on February 3, 2005. William noted that there were several wells on the development that were producing in paying quantities. He later admitted to receiving $314,757.78 in royalties based on the oil and gas production from the date of the lease to the date of trial—March 5, 2012.

In any event, Kerby testified that he thought he was purchasing the surface and mineral rights and that he would have offered less money for the lots if he had known he was only purchasing the surface rights. William, on the other hand, stated that he was selling only the surface rights and that he would have requested more money if the mineral rights were included with the sale of the surface rights.

Upon receiving the warranty deed, Kerby's counsel sent William a demand letter, requesting that William convey the mineral rights pursuant to the contract for deed that William drafted and Kerby kept. William refused to convey the mineral rights to the lots that Kerby purchased.

On September 22, 2008, Kerby filed his original petition, alleging breach of contract and Texas Business and Commerce Code section 27.01 fraud-in-real-estate causes of action. *See* TEX. BUS. & COM. CODE ANN. §27.01(a) (West 2009). Appellants responded by filing an original answer, asserting a general denial and affirmative defenses of estoppel by contract and fraud, and a counterclaim requesting a declaration that appellants own the mineral rights to the lots purchased by Kerby.

On March 5, 2012, the trial in this matter commenced. At the conclusion of the evidence, the jury found in favor of Kerby on his breach-of-contract claim.[3] In particular, the jury concluded that the evidence established that appellants agreed to convey the mineral rights to Lots 21 and 22 to Kerby and failed to comply with the agreement. The jury awarded Kerby $3,200 in damages and the following amounts in attorney's fees: (1) $30,000 for representation in the trial court; (2) $2,500 for representation in the court of appeals; (3) $2,500 for representation at the petition for review stage in the Supreme Court; (4) $2,500 for representation at the merits briefing stage in the Supreme Court; and (5) $5,000 for representation through oral argument and the completion of proceedings in the Supreme Court. Thereafter, the trial court

---

[3] Prior to charging the jury, the trial court granted a directed verdict as to Kerby's fraud-in-real-estate claim. Furthermore, appellants agreed to drop their fraud counterclaim.

signed a judgment mirroring the jury's findings and awarding Kerby an additional $553.60 in prejudgment interest measured from September 22, 2008, at a rate of 5% per annum. This appeal followed.

## II.    THE CONTRACTS FOR DEED

In their first issue, appellants contend that the evidence supporting the jury verdict on Kerby's breach-of-contract claim is legally insufficient. Specifically, appellants argue that there is no evidence that the parties mutually assented to the transfer of the mineral rights.

### A.    Standard of Review

The test for legal sufficiency is "whether the evidence at trial would enable reasonable and fair-minded people to reach the verdict under review." *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005). In making this determination, we credit favorable evidence if a reasonable factfinder could and disregard contrary evidence unless a reasonable factfinder could not. *Id.* So long as the evidence falls within the zone of reasonable disagreement, we may not substitute our judgment for that of the factfinder. *Id.* at 822. The trier of fact is the sole judge of the credibility of the witnesses and the weight to give their testimony. *See id.* at 819. Although we consider the evidence in the light most favorable to the challenged findings, indulging every reasonable inference that supports them, we may not disregard evidence that allows only one inference. *Id.* at 822.

## B.  Applicable Law

The elements of a breach of contract claim are:  (1) the existence of a valid contract between plaintiff and defendant; (2) the plaintiff's performance or tender of performance; (3) the defendant's breach of the contract; and (4) the plaintiff's damage as a result of the breach.  *Runge v. Raytheon E-Systems, Inc.*, 57 S.W.3d 562, 565 (Tex. App.—Waco 2001, no pet.).  Settled law establishes that the requisites for a valid contract are: (1) an offer; (2) an acceptance in strict compliance with the terms of the offer; (3) a meeting of the minds; (4) each party's consent to the terms; and (5) execution and delivery of the contract with the intent that it be mutual and binding.  *Choctaw Props., L.L.C. v. Aledo Indep. Sch. Dist.*, 127 S.W.3d 235, 245 (Tex. App.—Waco 2003, no pet.) (citing *New Caney Indep. Sch. Dist. v. Burnham AutoCountry, Inc.*, 30 S.W.3d 534, 537 (Tex. App.—Texarkana 2000, pet. denied); *Copeland v. Alsobrook*, 3 S.W.3d 598, 604 (Tex. App.—San Antonio 1999, pet. denied)).  To determine whether there was a meeting of the minds, a court reviews, in an objective fashion, what the parties actually said and did without consideration of subjective intent.  *Id.* (citing *Burnham AutoCountry, Inc.*, 30 S.W.3d at 538; *Copeland*, 3 S.W.3d at 604).  "'The court looks to the communications between the parties and to the acts and circumstances surrounding those communications."  *Id.* (quoting *Copeland*, 3 S.W.3d at 605).

In arguing that there was not a meeting of the minds regarding the mineral estate associated with Lots 21 and 22, appellants rely heavily on extrinsic evidence.  Moreover, at trial, the parties agreed that the contracts for deed were ambiguous.  Accordingly, when construing a written agreement, we must ascertain and give effect to the parties'

intentions as expressed in the agreement. *Frost Nat'l Bank v. L&F Distribs., Ltd.*, 165 S.W.3d 310, 311-12 (Tex. 2005) (per curiam); *Carbona v. CH Med., Inc.*, 266 S.W.3d 675, 680 (Tex. App.—Dallas 2008, no pet.). We discern intent from the agreement itself, and the agreement must be enforced as written. *Deep Nines, Inc. v. McAfee, Inc.*, 246 S.W.3d 842, 846 (Tex. App.—Dallas 2008, no pet.). We consider the entire writing and attempt to harmonize and give effect to all the provisions of the contract by analyzing the provisions with reference to the whole agreement. *Frost Nat'l Bank*, 165 S.W.3d at 312. In doing so, we will "'avoid when possible and proper a construction which is unreasonable, inequitable, and oppressive.'" *Id.* (quoting *Reilly v. Rangers Mgmt., Inc.*, 727 S.W.2d 527, 530 (Tex. 1987)). And, it is a rule of construction of deeds that they are to be most strongly construed against the grantor and in favor of the grantee; this rule applies to reservations and exceptions. *See Commerce Trust Co. v. Lyon*, 284 S.W.2d 920, 921 (Tex. Civ. App.—Fort Worth 1955, no writ); *see also Key Prod. Co. v. Quality Operating, Inc.*, No. 10-10-00379-CV, 2013 Tex. App. LEXIS 4074, at *10 (Tex. App.—Waco Mar. 28, 2013, no pet.) (mem. op.).

When a written contract is so worded that it can be given a certain or definite legal meaning or interpretation, it is not ambiguous, and the court construes it as a matter of law. *Am. Mftrs. Mut. Ins. Co. v. Schaefer*, 124 S.W.3d 154, 157 (Tex. 2003). On the other hand, a contract is ambiguous when its meaning is uncertain and doubtful or is reasonably susceptible to more than one interpretation. *Heritage Res., Inc. v. NationsBank*, 939 S.W.2d 118, 121 (Tex. 1996). This determination is made in light of the circumstances present when the parties entered into the contract. *Ganske v. Spence*, 129

S.W.3d 701, 707 (Tex. App.—Waco 2004, no pet.) (citing *Grimes v. Andrews*, 997 S.W.2d 877, 881 (Tex. App.—Waco 1999, no pet.)). An ambiguity does not arise simply because the parties advance conflicting interpretations of the contract. *Columbia Gas Transmission Corp. v. New Ulm Gas, Ltd.*, 940 S.W.2d 587, 589 (Tex. 1996). For an ambiguity to exist, both interpretations must be reasonable. *Id.*

Further, extrinsic evidence of intent is admissible only if the deed is ambiguous on its face. *See Friendswood Dev. Co. v. McDade & Co.*, 926 S.W.2d 280, 283 (Tex. 1996); *see also CenterPoint Energy Houston Elec., L.L.P. v. Old TJC Co.*, 177 S.W.3d 425, 431 (Tex. App.—Houston [1st Dist.] 2005, pet. denied) ("A court may consider the parties' interpretations of the contract through extrinsic or parol evidence only after a contract is first determined to be ambiguous."). A mere disagreement about the proper interpretation of a contract, however, does not make the contract ambiguous; the instrument is ambiguous only if, after application of the rules of construction, the contract is reasonably susceptible to more than one meaning. *Brown v. Havard*, 593 S.W.2d 939, 942 (Tex. 1980); *Universal C.I.T. Credit Corp. v. Daniel*, 150 Tex. 513, 243 S.W.2d 154, 157 (1951).

Moreover, the Texas Supreme Court has also held that "all writings that pertain to the same transaction will be considered together, even if they were executed at different times and do not expressly refer to one another." *DeWitt County Elec. Coop., Inc. v. Parks*, 1 S.W.3d 96, 102 (Tex. 1999); *see Miles v. Martin*, 159 Tex. 336, 321 S.W.2d 62, 65 (1959) ("It is well settled that separate instruments executed at the same time, between the same parties, and relating to the same subject matter may be considered

together and construed as one contract."); *GPA Holding, Inc. v. Baylor Health Care Sys.*, 344 S.W.3d 467, 471 (Tex. App.—Dallas 2011, pet. denied); *see also McDowell v. Bier*, No. 2-09-231-CV, 2010 Tex. App. LEXIS 2546, at **9-10 (Tex. App.—Fort Worth Apr. 8, 2010, no pet.) (mem. op.).  The supreme court cautioned, however, "that this rule is simply a device for ascertaining and giving effect to the intention of the parties and cannot be applied arbitrarily."  *Parks*, 1 S.W.3d at 102 (citing *Miles*, 321 S.W.2d at 65).

## C. Discussion

Because of the existence of the two differing contracts for deed, and because of the conflicting testimony from Kerby and William regarding whether the mineral estate was considered in the contract negotiations, appellants argue that the evidence is insufficient to establish a meeting of the minds.  In essence, appellants challenge only one element of Kerby's breach-of-contract claim—the existence of a valid contract between the parties.

The record reflects that William drafted, signed, and sent two contracts for deed to Kerby, one of which stated that the mineral rights would be conveyed to Kerby once the contract was paid in full.  Kerby signed the contracts and fully performed.  Given this evidence, we are not persuaded by appellants' argument that the parties did not have a meeting of the minds or, in other words, a valid contract.[4]  Further, we must

---

[4] We do not believe that either contract for deed, when read alone, is ambiguous.  *See Am. Mftrs. Mut. Ins. Co. v. Schaefer*, 124 S.W.3d 154, 157 (Tex. 2003); *see also Heritage Res., Inc. v. NationsBank*, 939 S.W.2d 118, 121 (Tex. 1996).  The purported ambiguity resulted from trying to read both contracts for deed together.  However, the jury was posed with the task of essentially choosing which contract for deed encapsulated the parties' agreement.  And the jury ultimately concluded that, based on the evidence, the contract for deed that William drafted and Kerby signed and kept memorialized the parties' agreement.  Therefore, even if we were to read both contracts for deed together, we must construe the

emphasize the fact that William drafted both of the contracts for deeds, and Texas law provides that contracts are to be construed against the drafter. *See AT&T Corp. v. Rylander*, 2 S.W.3d 546, 559 (Tex. App—Austin 1999, pet. denied) ("As a general rule, writings are construed strictly against the author and in a manner so as to reach a reasonable result that is consistent with the intent of the parties."); *Lyon*, 284 S.W.2d at 921; *see also Key Prod. Co.*, 2013 Tex. App. LEXIS 4074, at *10.

In addition, we believe that the existence of the second contract for deed that differed from the one kept by Kerby and Kerby's and William's conflicting testimony about the contract negotiations constituted parol evidence about the surrounding circumstances of the contract negotiations and merely created fact issues, which are within the province of the jury to resolve.[5] *See Wilson*, 168 S.W.3d at 819. Clearly, in concluding that the parties agreed that Kerby would receive the mineral rights once the contract was paid in full, the jury believed that the contract that William drafted and Kerby kept, rather than the contract signed by Kerby and returned to William, encapsulated the parties' agreement. *See id.* Ultimately, the jury's conclusion is supported by the contract for deed that was kept by Kerby.

Therefore, viewing the evidence in the light most favorable to the jury's verdict, we cannot say that the jury was unreasonable in concluding that the parties agreed that

---

contracts against William and conclude that Kerby is entitled to the mineral rights to Lots 21 and 22. *See AT&T Corp. v. Rylander*, 2 S.W.3d 546, 559 (Tex. App—Austin 1999, pet. denied); *Commerce Trust Co. v. Lyon*, 284 S.W.2d 920, 921 (Tex. Civ. App.—Fort Worth 1955, no writ); *see also Key Prod. Co. v. Quality Operating, Inc.*, No. 10-10-00379-CV, 2013 Tex. App. LEXIS 4074, at *10 (Tex. App.—Waco Mar. 28, 2013, no pet.) (mem. op.). The existence of the second contract for deed does not somehow invalidate the first.

[5] At trial, William, a retired college professor who has participated in approximately seventy real-estate transactions, explained that the contract for deed tendered to Kerby contained a mistake attributable to William's computer program.

Kerby would receive the mineral rights upon completion of the contract and that appellants' failure to convey the mineral rights upon Kerby's completion of the contract amounted to a breach of contract. *See Wilson*, 168 S.W.3d at 822, 827; *see also Choctaw Props., L.L.C.*, 127 S.W.3d at 245; *Runge*, 57 S.W.3d at 565. Accordingly, we conclude that the evidence supporting the jury's verdict on Kerby's breach-of-contract claim is legally sufficient. *See Wilson*, 168 S.W.3d at 822, 827; *see also Choctaw Props., L.L.C.*, 127 S.W.3d at 245; *Runge*, 57 S.W.3d at 565. We overrule appellants' first issue.

### III.   ATTORNEY'S FEES

In their second issue, appellants complain about the attorney's fees awarded to Kerby. In particular, appellant contend that the attorney's fees award should be reversed because Kerby failed to segregate his fees. Kerby responds that he was not required to segregate his attorney's fees because he alleged two causes of action—breach of contract and fraud-in-real-estate—that are "inextricably intertwined."

### A.   Error Preservation

A party seeking to recover attorney's fees is "required to segregate fees between claims for which they are recoverable and claims for which they are not." *Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 311 (Tex. 2006); *accord NP Anderson Cotton Exch., L.P. v. Potter*, 230 S.W.3d 457, 466 (Tex. App.—Fort Worth 2007, no pet.). Conversely, the opposing party must properly preserve for appellate review a contention that the fee claimant failed to segregate the fees sought. *Green Int'l, Inc. v. Solis*, 951 S.W.2d 384, 389 (Tex. 1997); *Cullins v. Foster*, 171 S.W.3d 521, 535-36 (Tex. App.—Houston [14th Dist.] 2005, pet. denied); *Cont'l Dredging, Inc. v. De-Kaizered, Inc.*, 120 S.W.3d 380, 397

(Tex. App.—Texarkana 2003, pet. denied). Generally, such an issue is preserved by objection during testimony offered in support of attorney's fees or an objection to the jury question on attorney's fees. *See Cullins*, 171 S.W.3d at 535-36; *Cont'l Dredging, Inc.*, 120 S.W.3d at 397.

Here, appellants objected to testimony provided by Kerby's trial counsel regarding attorney's fees. Appellants argued that trial counsel's attorney's fees figure was inaccurate given that the trial court directed a verdict on Kerby's fraud-in-real-estate claim. Appellants also objected to the charge questions about attorney's fees on the basis of segregation. Given this, we conclude that appellant has preserved this issue for review. *See Cullins*, 171 S.W.3d at 535-36; *Cont'l Dredging, Inc.*, 120 S.W.3d at 397.

**B. The "Inextricably Intertwined" Exception to the Segregation of Attorney's Fees**

"[T]he need to segregate fees is a question of law." *Chapa*, 212 S.W.3d at 312. The courts of appeals have generally (though not always) applied a de novo standard of review. *Id.* Nonetheless, "it may often be impossible to state as a matter of law the extent to which certain claims can or cannot be segregated; the issue is more a mixed question of law and fact for the jury." *Id.*

As noted above, Kerby argues that he did not have to segregate his attorney's fees because his breach-of-contract and fraud-in-real-estate claims are "inextricably intertwined." Texas courts have held that a party requesting attorney's fees is required to exclude fees that are not earned in pursuing claims presented during trial of the case. *See Chilton Ins. Co. v. Pate & Pate Enters., Inc.*, 930 S.W.2d 877, 896 (Tex. App.—San Antonio 1996, writ denied) (citing *Stewart Title Guar. Co. v. Sterling*, 822 S.W.2d 1, 10-11

(Tex. 1991)); *see also Helm v. Kingston*, No. 13-10-00224-CV, 2011 Tex. App. LEXIS 10024, at \*42 (Tex. App.—Corpus Christi Dec. 21, 2011, pet. denied) (mem. op.).  However, an exception to the segregation requirement applies when the attorney's fees incurred are rendered in connection with claims arising from the same transaction or occurrence and are so interrelated that their prosecution or defense entails proof or denial of essentially the same facts.  *Ski River Dev., Inc. v. McCalla*, 167 S.W.3d 121, 143 (Tex. App.—Waco 2005, pet. denied) (citing *Stewart Title Guar. Co.*, 822 S.W.2d at 11); *see Chapa*, 212 S.W.3d at 313-14 (noting that "a claimant must segregate recoverable from unrecoverable fees. [And] . . . it is only when discrete legal services advance both a recoverable and unrecoverable claim that they are so intertwined that they need not be segregated").

Here, Kerby's claims involved:  (1) contracts for deed pertaining to real estate, (2) in which appellants and Kerby were parties, (3) where appellants made representations to Kerby regarding the conveyance of mineral rights associated with Lots 21 and 22, (4) where appellants failed to convey the mineral rights purportedly covered by their agreement with Kerby, and (5) which resulted in injury to Kerby.  Based on the foregoing, we conclude that both of Kerby's claims arose from the same transaction or occurrence and involved "essentially the same facts."  *See Chapa*, 212 S.W.3d at 313-14; *Stewart Title Guar. Co.*, 822 S.W.2d at 11; *see also McCalla*, 167 S.W.3d at 143. Accordingly, Kerby was not required to segregate his fees.[6]  *See Chapa*, 212 S.W.3d at

---

[6] Appellants also suggest that Kerby should have segregated his fees because the trial court granted a directed verdict as to Kerby's fraud-in-real-estate claim. *See Int'l Sec. Life Ins. Co. v. Finck*, 496 S.W.2d 544, 546-47 (Tex. 1973) (holding that attorney's fees are recoverable only for authorized claims). We do not find this argument to be persuasive given our conclusion that the facts involved in Kerby's two causes of action are "inextricably intertwined" and because both causes of action permitted the

313-14; *Stewart Title Guar. Co.*, 822 S.W.2d at 11; *McCalla*, 167 S.W.3d at 143; *see also Helm*, 2011 Tex. App. LEXIS 10024, at *42. We overrule appellants' second issue.

## IV. CONCLUSION

Having overruled both of appellants' issues on appeal, we affirm the judgment of the trial court.


AL SCOGGINS
Justice


Before Chief Justice Gray,
         Justice Davis, and
         Justice Scoggins
Affirmed
Opinion delivered and filed August 8, 2013
[CV06]

---

recovery of attorney's fees. *See* TEX. BUS. & COM. CODE ANN. § 27.01(e) (West 2009) (permitting the recovery of attorney's fees for a fraud-in-real-estate claim); TEX. CIV. PRAC. & REM. CODE ANN. § 38.001(8) (West 2008) (permitting the recovery of attorney's fees for a claim based on an oral or written contract); *see also Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 313-14 (Tex. 2006) (concluding that attorney's fees need not be segregated if the facts underlying the claims are "inextricably intertwined"); *Ski River Dev., Inc. v. McCalla*, 167 S.W.3d 121, 143 (Tex. App.—Waco 2005, pet. denied) (noting that attorney's fees need not be segregated when the fees incurred are rendered in connection with claims arising from the same transaction or occurrence and are so interrelated that their prosecution or defense entails proof or denial of essentially the same facts); *but see Chapa*, 212 S.W.3d at 304 ("For fraud, she could recover economic damages, mental anguish, and exemplary damages, but not attorney's fees." (citing *New Amsterdam Cas. Co. v. Tex. Indus., Inc.*, 414 S.W.2d 914, 915 (Tex. 1967) (stating that "attorney's fees are not recoverable either in an action in tort or a suit upon a contract unless provided by statute or by contract between the parties"); *Neeley v. Bankers Trust Co. of Tex.*, 757 F.2d 621, 633 (5th Cir. 1985))).