COURT OF 
APPEALS
SECOND DISTRICT OF TEXAS
FORT WORTH
 
NO. 2-03-152-CV
  
  
JACQUELINE 
C. HEAD, INDIVIDUALLY                                     APPELLANT
AND 
AS SUCCESSOR TRUSTEE
UNDER 
THE FTW LIVING TRUST
  
V.
  
U.S. 
INSPECT DFW, INC. F/K/A                                                APPELLEES
AFFORDABLE 
INSPECTIONS, INC.
AND 
JOHN FOX
   
   
------------
 
FROM 
THE 17TH DISTRICT COURT OF TARRANT COUNTY
 
------------
 
OPINION
 
------------
INTRODUCTION
        Jacqueline 
Head appeals from the trial court’s grant of summary judgment in favor of U.S. 
Inspect DFW, Inc. f/k/a Affordable Inspections, Inc. (“Affordable”) and John 
Fox.  Head argues that the trial court erred in (1) holding that the 
professional services exemption barred her claims under the Deceptive Trade 
Practices Act (“DTPA”), (2) holding that a limitation of liability clause in 
Head’s contract with Affordable applied to her breach of contract and 
negligence claims, and (3) awarding attorneys’ fees to Appellees.  We 
affirm in part and reverse and remand in part.
FACTUAL AND PROCEDURAL BACKGROUND
Purchase and Inspection of the Residence
        In 
1998, the FTW Living Trust, through its trustee Leonard Rodes, contracted to 
purchase a home in Fort Worth from Alfred and Susan Finley for the benefit of 
Appellant Jacqueline Head, as sole beneficiary of the FTW Living Trust.  
Head intended to occupy the home as her residence.  Mike Goodrich, a Fort 
Worth attorney board certified in real estate law, assisted Head and Rodes 
during this process.
        Prior 
to Head’s purchase of the home, four separate inspections were 
conducted.  The inspection that is the subject of this lawsuit was 
conducted by Affordable.[1]  On June 19, 1998, 
Head entered into a written agreement with Affordable for a “Real Estate 
Inspection” of the home.  The contract provided that a “licensed real 
estate inspector” would perform the inspection, limited to a visual inspection 
of the “Readily Accessible Items Agreed To Be Inspected.”  The contract 
specified that neither the inspection nor the report would include any 
warranties, express or implied, unless specifically stated.  Additionally, 
the agreement contained a clause that limited liability for “errors and 
omissions” to the amount paid for the inspection, not to exceed $500.  
This limitation of liability clause was set apart from the other provisions, 
enclosed in a box, and separately initialed by Head.  The contract was 
signed by Head and by John Fox, identified as “Inspector.”
        According 
to Head’s affidavit, filed in response to Appellees’ Motion for Summary 
Judgment, she was present when John Fox, assisted by Jim Blaeser, performed the 
inspection on June 19, 1998.  Head averred that Blaeser, whom she only 
later learned was an “apprentice inspector” rather than a licensed real 
estate inspector, conducted the inspection of the attic and roof of the home 
without the assistance or supervision of Fox.  Head alleges that Fox never 
entered the attic nor climbed on the roof, although Fox stated in a deposition, 
attached to Head’s response to Appellees’ motion for summary judgment, that 
he did climb onto the roof and did perform the roof inspection.
        Following 
the inspection, Fox prepared an inspection report, which was provided to Head 
and her attorney.  The report was signed by John Fox, but not Jim Blaeser.  
The inspection report indicated the areas of the residence inspected by Fox and 
included a summary of potential problem areas and items in need of repair.  
The report is checkmarked, showing that the rooftop was accessible and that the 
roof, roof structure, and attic were inspected.  The report is checkmarked 
indicating “Evidence of Visible Water Penetration” on the roof, but there is 
also a notation that the roof was “Performing its function as intended AT 
THIS TIME.” [Emphasis in original.]  Head stated in her affidavit 
that she and Fox discussed particular problem areas that he thought were 
important, such as missing weather seals and the absence of caulking from some 
of the windows, but that Fox never told her that the weather seals or caulking 
were causing water penetration, nor did he mention any problems with the roof.
Discovery of Leaks
        After 
closing on the home in July of 1998, Appellant hired contractors to make some 
minor updates and modifications to the home, which included changing wall and 
window treatments.  Appellant stated in her affidavit that due to 
sensitivity to paint and “other construction related materials” she did not 
plan on moving into the home until after the painting was complete.  Head 
went to the house on October 2, 1998 during a rainstorm and met with several 
contractors from A Window Warehouse.  Head stated that she and the 
contractors discovered water running down the interior of the kitchen windows 
and pooling onto the countertop, water running down the interior of the glass 
block window in the master bathroom, and water leaking in from the living room 
ceiling.  Head instructed the contractors to remove sheetrock from around 
the kitchen windows in an attempt to find the source of the leak and stated that 
when the sheetrock was removed, she observed “water, extensive wood rot, mold, 
and rusty nails.”
        Subsequently, 
A Window Warehouse provided a report to Head, noting its initial observations on 
October 2, 1998 and also containing a description of other damage observed on 
October 6, 1998.  The report supports Head’s observations in the kitchen 
and also describes other water damage, including water in a light fixture and 
stains on the ceiling in the garage and evidence that the living room ceiling 
had been recently textured, covering old water stains.  The report from A 
Window Warehouse shows that the roof was inspected in an attempt to locate other 
potential sources of water damage, makes numerous notations of problems with the 
roof, and concludes that the roof should be inspected by a roof 
professional.  Head then hired PSM Consultants to conduct an inspection to 
determine the condition of the roof and walls and to determine the source of the 
leaks.  The report provided by PSM Consultants lists numerous anomalies on 
the roof that, in its opinion, would allow water to penetrate into the 
house.  The report by PSM concluded that, in its opinion, the problems 
discovered on the roof existed prior to 1998 and “should have been obvious to 
anyone familiar with proper wall and roof construction methods and materials.”
        On 
November 9, 1998, a structural and foundation inspection was conducted by David 
Bulla, a structural engineer.  He conducted a visual inspection and 
compiled a report on the roof.  He indicated that “[o]verall, this roof 
is in very poor condition and has not been properly constructed.  Leakage 
into the interior and exterior walls is unavoidable in the present 
condition.”  The report continues that “[t]he roof system has excessive 
deterioration; and the shingles are in poor condition and improperly installed. 
. . . The roof has several areas that are leaking and allowing water to enter 
the walls and interior of the residence.  Total replacement will probably 
be necessary . . . .”  The report concludes that the “situation did not 
develop in a short period of time as indicated by the amount of patching and 
repair work that had been attempted” and the “extent of damage that was 
observed must have been developing over several years.”
LAWSUIT
        On 
July 28, 2000, Head and Leonard Rodes, as trustee under the FTW Living Trust, 
sued the sellers of the residence, Alfred and Susan Finley; Affordable; and John 
Fox.  On September 21, 2001, a “First Amended Original Petition” was 
filed leaving Head, individually and as successor trustee under the FTW Living 
Trust, as the sole plaintiff.  Head asserted claims for violations of the 
DTPA and fraud against the Finleys[2] and breach of 
contract, breach of warranty, negligence, and DTPA violations against Affordable 
and Fox.
Causes of Action Against Affordable and Fox
        In 
her lawsuit, Head alleged that Affordable and Fox (1) breached their contract by 
failing to perform in substantial conformity with the contract and failing to 
perform in a good and workmanlike manner; (2) breached an implied warranty that 
their services would be performed in a good and workmanlike manner; (3) were 
negligent in failing to “detect severe decay, mold, fungal growth and 
extensive deterioration caused by excessive water intrusion”; and (4) violated 
several provisions of the DTPA, including violations of the laundry list 
provisions,[3] breach of express and implied 
warranties, and unconscionable action or course of action. Tex. Bus. & Com. Code Ann. § 
17.50(a)(1), (2), and (3) (Vernon 2002).
Summary Judgment
        On 
December 11, 2001, Affordable and Fox filed a traditional motion for summary 
judgment on the pleadings, asserting that they were entitled to judgment as a 
matter of law on all Head’s claims.  First, they asserted that Head’s 
DTPA claims were barred by the professional services exemption, claiming the 
inspection and report by Fox was a professional service “the essence of which 
is the providing of advice, judgment, opinion, or similar professional skill.” 
 Tex. Bus. & Com. Code Ann. § 
17.49(c) (Vernon Supp. 2004-05).  Secondly, they moved for summary judgment 
on the implied warranty claim asserting that there is no implied warranty on the 
type of service they provided.  Finally, Affordable and Fox moved for 
summary judgment on the breach of contract and negligence claims based upon the 
limitation of liability clause in the inspection agreement, which limited 
recovery to the amount paid for the services not to exceed $500.  
Affordable and Fox asserted that they had tendered $348.27 to Head, which was 
the amount paid for the inspection, and therefore they had no further liability.
        Head 
filed a response to the motion for summary judgment, asserting that the DTPA 
claims fell within statutory exceptions set forth in the professional services 
exemption.  Head specifically asserted that Affordable and Fox made express 
misrepresentations of material fact and express warranties that could not be 
characterized as advice, judgment, or opinion; failed to disclose information in 
violation of section 17.46(b)(24); and engaged in unconscionable action.[4]  Additionally, Head challenged the validity of the 
limitation of liability clause as unconscionable or void due to fraud and 
failure of consideration.
        On 
January 24, 2003, the trial court granted summary judgment in favor of 
Affordable and Fox.  The trial court’s order specifically stated that it 
considered the “pleadings timely filed, the motion for summary judgment, [and] 
the response filed by Plaintiffs” but that it did not consider 
“Plaintiff’s Second Amended Original Petition or Defendant’s Objection to 
Affidavit of Jacqueline C. Head” because they were not timely filed.  The 
trial court’s order specifically set forth the grounds upon which the summary 
judgment for Affordable and Fox was granted, stating that (1) Affordable and Fox 
were exempt from the DTPA causes of action under the professional services 
exemption and (2) Affordable and Fox were liable for negligence and breach of 
contract, but such claims were limited to $348.27 under the limitation of 
liability clause.  The court further awarded attorneys’ fees in favor of 
Affordable and Fox in the amount of $25,861.58 with interest.  Head 
appealed to this court; however, we abated the appeal and remanded to the trial 
court to clarify whether its summary judgment disposed of Head’s breach of 
implied warranty claim.  We reinstated the appeal after the trial court 
entered a corrected order specifying that the summary judgment order disposed of 
all claims, including the breach of implied warranty claim.
STANDARD OF REVIEW
        We 
review the trial court’s summary judgment de novo.  Joe v. Two Thirty 
Nine Joint Venture, 145 S.W.3d 150, 156 (Tex. 2004).  In a traditional 
summary judgment case, the issue on appeal is whether the movant met his summary 
judgment burden by establishing that no genuine issue of material fact exists 
and that the movant is entitled to judgment as a matter of law.  Tex. R. Civ. P. 166a(c); S.W. Elec. 
Power Co. v. Grant, 73 S.W.3d 211, 215 (Tex. 2002); City of Houston v. 
Clear Creek Basin Auth., 589 S.W.2d 671, 678 (Tex. 1979).  The burden 
of proof is on the movant, and all doubts about the existence of a genuine issue 
of material fact are resolved against the movant.  S.W. Elec. Power Co., 
73 S.W.3d at 215; Sci. Spectrum, Inc. v. Martinez, 941 S.W.2d 910, 911 
(Tex. 1997); Great Am. Reserve Ins. Co. v. San Antonio Plumbing Supply Co., 
391 S.W.2d 41, 47 (Tex. 1965).  Therefore, we must view the evidence and 
its reasonable inferences in the light most favorable to the nonmovant.  Great 
Am., 391 S.W.2d at 47.
        In 
deciding whether there is a material fact issue precluding summary judgment, all 
conflicts in the evidence are disregarded and the evidence favorable to the 
nonmovant is accepted as true.  Harwell v. State Farm Mut. Auto. Ins. 
Co., 896 S.W.2d 170, 173 (Tex. 1995).  Evidence that favors the 
movant's position will not be considered unless it is uncontroverted.  Great 
Am., 391 S.W.2d at 47.  The summary judgment will be affirmed only if 
the record establishes that the movant has conclusively proved all essential 
elements of the movant's cause of action or defense as a matter of law.  Clear 
Creek Basin, 589 S.W.2d at 678.
        A 
defendant is entitled to summary judgment if the summary judgment evidence 
establishes, as a matter of law, that at least one element of a plaintiff’s 
cause of action cannot be established.  Elliott-Williams Co. v. Diaz, 
9 S.W.3d 801, 803 (Tex. 1999).  The defendant as movant must present 
summary judgment evidence that negates an element of the plaintiff’s 
claim.  Centeq Realty, Inc. v. Siegler, 899 S.W.2d 195, 197 (Tex. 
1995).  Once the defendant produces sufficient evidence to establish the 
right to summary judgment, the burden shifts to the plaintiff to come forward 
with competent controverting evidence raising a genuine issue of material fact 
with regard to the element challenged by the defendant.  Id.
        A 
defendant is entitled to summary judgment on an affirmative defense if the 
defendant conclusively proves all the elements of the affirmative defense.  
Rhone-Poulenc, Inc. v. Ramirez, 997 S.W.2d 217, 223 (Tex. 1999).  To 
accomplish this, the defendant-movant must present summary judgment evidence 
that establishes each element of the affirmative defense as a matter of 
law.  Ryland Group, Inc. v. Hood, 924 S.W.2d 120, 121 (Tex. 1996).
DTPA
        Head 
argues that the trial court erred in granting the summary judgment on her DTPA 
causes of action because she raised genuine issues of material fact as to 
whether her claims were within one or more of the exceptions to the professional 
services exemption from DTPA liability.  Appellees Affordable and Fox 
contend that no exceptions to the professional services exemption were pleaded 
at the time of the summary judgment hearing, and they argue that the factual 
allegations recited in Head’s brief refer to her Fourth Amended Original 
Petition, which was not considered by the trial court in granting Appellees’ 
motion.  Appellees also take the position that Head had the burden to 
establish that her DTPA claims fell within the exceptions to the professional 
services exemption and that she failed to bring forward any summary judgment 
evidence to meet this burden.  Appellees conclude that, because Head failed 
to meet her burden to properly plead or present evidence raising a fact issue as 
to one or more of the exceptions to the exemption in the trial court, she cannot 
now raise those statutory exceptions to the professional services exemption on 
appeal in an attempt to defeat the motion for summary judgment.
        Head 
does not dispute that her Fourth Amended Petition was not considered by the 
trial court, nor does she argue that the trial court considered her second and 
third amended petitions.  Nevertheless, we cannot agree with Appellees’ 
argument that Head is precluded from relying on the statutory exceptions to the 
professional services exemption.  First, Head pleaded DTPA causes of action 
for laundry list violations, failure to disclose information, breach of express 
warranty, and unconscionability in her First Amended Original Petition, which 
was before the trial court at the time of the summary judgment hearing.
        The 
professional services exemption from liability is properly characterized as an 
affirmative defense that must be pleaded because it is a plea of confession and 
avoidance.  Tex. R. Civ. P. 
94; see David Skeels, The DTPA’s Professional Services Exemption: 
Let ‘Em Be Doctors and Lawyers and Such, 55 Baylor L. Rev. 783, 828 (2003).[5]  Head does not argue that the inspection and report 
furnished by Appellees did not constitute professional services, and we will not 
address that issue.  Instead, Head assumes arguendo that Appellees 
provided professional services.  We have found no case considering whether 
the exceptions listed in section 17.49(c) to the professional services exemption 
from liability under the DTPA constitute counter-affirmative defenses, but we 
likewise need not decide that issue because Head concedes that she had the 
burden to raise a fact issue as to whether her claims fell within one or more of 
the exceptions.
        A 
plaintiff may raise a fact issue by coming forward with evidence on each element 
of its own counter-affirmative defense to the defendant’s affirmative 
defense.  See Ryland Group, 924 S.W.2d at 122 (holding that to 
defeat summary judgment on statute of repose, plaintiff had burden to raise fact 
issue on fraudulent concealment); American Petrofina, Inc. v. Allen, 887 
S.W.2d 829, 830 (Tex. 1994) (same).
        Although 
she had not specifically pleaded any of the statutory exceptions to the 
exemption in her First Amended Original Petition, Head asserted the exceptions 
to the professional services exemption as well as facts to support the 
exceptions in her response to the motion for summary judgment.  Further, 
she provided evidence by her affidavit and attached documentation, as detailed 
above, in an effort to show that her claims fell within exceptions to the 
exemption.  The trial court stated in its order granting summary judgment 
that it considered all timely filed pleadings, the summary judgment motion, and 
the response filed by Head.  The trial court further stated in its order 
that it considered the summary judgment evidence admitted for consideration and 
that it did not consider “Defendants’ Objection to Affidavit of Jacqueline 
Head.”
        Appellees 
did not object to Head’s response in the trial court on the grounds that Head 
failed to plead the exceptions to the professional services exemption.  
Thus, their argument that she failed to plead the exceptions is now waived, and 
we may consider the exceptions raised by Head’s response to the motion for 
summary judgment and the evidence provided by her affidavit to determine whether 
a fact issue was raised.[6]  See Roark v. 
Stallworth Oil & Gas, Inc., 813 S.W.2d 492, 494-95 (Tex. 1991) 
(recognizing rule that unpleaded claims tried by express or implied consent are 
treated as if raised by pleading applies to issues raised in motion for summary 
judgment); Bradt v. West, 892 S.W.2d 56, 66 (Tex. App.—Houston [1st 
Dist.] 1994, writ denied) (holding unpleaded affirmative defense raised in 
motion for summary judgment may be considered absent objection to lack of 
pleading).  Therefore, we will address the merits of Head’s claims to 
determine whether she has raised a fact issue that her DTPA claims fall within 
the exceptions to the professional services exemption.
Express Misrepresentations
        Head 
argues first that she raised an issue of fact that Appellees made express 
misrepresentations of fact “that cannot be characterized as advice, judgment, 
or opinion” and are thus within the first exception to the professional 
services exemption to DTPA liability. Tex. Bus. & Com. Code Ann. § 
17.49(c)(1).  In her response to the motion for summary judgment, Head 
asserted that Appellees made misrepresentations that are actionable under 
section 17.46(b)(2), (5), (7) and (12), first, by promising in the inspection 
agreement to provide a “licensed real estate inspector” when, in fact, they 
did not, and, second, by furnishing her the inspection report stating that 
certain, specified items had been inspected personally by a licensed real estate 
inspector. Id. § 17.46(b)(2), (5), (7), and (12).  Head further 
asserted that misrepresentations were made that the inspected items were 
performing their intended function.  Id.  She argues that these 
misrepresentations dealt with “factual conditions” rather than opinion and 
therefore are outside the professional services exemption.
        We 
cannot agree with Head’s claim that the inspection report misrepresented 
“facts,” rather than opinions, by stating that the roof and attic were 
performing their intended function.  By the inspection agreement, Appellees 
expressly agreed to provide an inspection report that would “contain the opinion 
of the Inspector on the need for repair or replacement of the items 
inspected” and that “[i]t is agreed that opinions expressed by the 
Inspector are only opinions . . . .” [Emphasis in original.]  
Thus, the essence of the services to be provided by Affordable and Fox was to 
render professional opinions, for which any liability is exempted from the DTPA 
by the professional services exemption.  Id. § 17.49(c) (exempting 
claims for damages based upon rendering of professional service, “the essence 
of which is the providing of . . . opinion).  The condition of the attic 
and roof at the time of the inspection was the very subject of the opinions 
agreed to be provided. The claimed misrepresentation as to the condition of the 
attic and roof in the report can only be characterized as “opinion.”  
It is self-evident that the exception sought to be invoked by Head for 
“misrepresentation of material fact that cannot be characterized as . . . 
opinion” clearly does not apply.  Id. § 17.49(c)(1).  
Characterizing the opinions as to the existing condition of the roof and attic 
contained in the report as “facts” as to existing conditions does not change 
their nature as opinions.
        Likewise, 
Head’s claim that Appellees made an express representation by promising an 
inspection by a “licensed real estate inspector” and her complaint that an 
apprentice, unsupervised by a licensed real estate inspector, performed the 
inspection instead relate directly to the level of expertise necessary for the 
opinions Appellees agreed to furnish. In determining whether Head’s 
misrepresentation claim in this regard is barred by the professional services 
exemption, we look to the underlying nature of the claim, which is breach of 
contract and negligence in rendering the inspection services.  See Chemd, 
Inc. v. KPMG Peat Marwick, L.L.P., No. 05-00-00816-CV, 2001 WL 893989, at *6 
(Tex. App.—Dallas Aug. 9, 2001, pet. denied) (not designated for publication) 
(holding that to determine whether claim was barred by professional services 
exemption, court would look to nature of underlying claim).  The evidence 
relied upon by Head in this regard is testimony from the deposition of Fox, in 
which he admitted that a failure to personally supervise an apprentice would 
fall below the standard of care of a licensed real estate inspector.
        A 
plaintiff by artful pleading cannot recast a claim in order to avoid the adverse 
effect of a statute.  In re Kimball Hill Homes Tex., Inc., 969 
S.W.2d 522, 526 (Tex. App.—Houston [14th Dist.] 1998, orig. proceeding); see 
Chemd, Inc., 2001 WL 893989, at *6 (holding complaint that accounting 
firm failed to advise plaintiff that it used less experienced auditors and fewer 
hours did not come within exception for failure to disclose facts not 
constituting advice, judgment, or opinion, when underlying substance of claim 
was professional negligence in performing audits); cf. Garland Community 
Hosp. v. Rose, No. 02-0902, 2004 WL 2480381, at *3 (Tex. Nov. 5, 2004) 
(holding claim that hospital was negligent in credentialing physician who 
performed surgeries on plaintiff was inextricably intertwined with and 
inseparable from quality of patient’s treatment and, therefore, was a 
“health care liability claim” governed by the Medical Liability and 
Insurance Improvement Act).
        Therefore, 
we hold that the trial court did not err in granting the motion for summary 
judgment as to Head’s claims of misrepresentations under the DTPA.  As in 
Chemd, Inc., the essence of Head’s complaints is that Appellees were 
negligent in rendering erroneous opinions based upon an apprentice’s 
unsupervised inspection, upon which she relied in purchasing the house.  
Absent the alleged erroneous opinions, she would have no claim for the asserted 
misrepresentations regarding who would perform the inspection or how it would be 
performed.  Thus, the asserted misrepresentations that a licensed real 
estate inspector would be used and was used are an inseparable part of the 
professional services of which she complains.  By unsuccessfully attempting 
to characterize Appellees’ agreement to furnish a certain quality of services 
as a misrepresentation of existing “fact,” Head has failed to raise a fact 
issue within the exception for misrepresentations not constituting “judgment, 
advice, or opinion.” Tex. Bus. & Com. Code Ann. § 
17.49(c)(1).
        Additionally, 
Head’s complaint regarding the failure to have a licensed real estate 
inspector perform the inspection is based upon a term in the inspection 
agreement.  Thus, her claim that Appellees provided a report based upon an 
inspection only by an apprentice is, in effect, a claim that Appellees failed to 
fulfill a term of the contract.[7]  Without more, 
failure to perform a term of a contract is simply not a violation of the DTPA. Crawford 
v. Ace Sign, Inc., 917 S.W.2d 12, 13-14 (Tex. 1996) (holding alleged breach 
of contract, without more, does not allege a violation of the DTPA); Conquest 
Drilling Fluids, Inc. v. Tri-Flo Int’l, Inc., 137 S.W.3d 299, 309 (Tex. 
App.—Beaumont 2004, no pet. h.) (holding alleged failure to fulfill promise to 
build unit free of defects did not state violation of DTPA under section 17.46 
(b)(2), (5), and (7)); Cont’l Dredging, Inc. v. De-Kaizered, Inc., 120 
S.W.3d 380, 390 (Tex. App.—Texarkana 2003, pet. denied) (holding 
misrepresentations that contract had been performed when it allegedly had not 
been gave rise to breach of contract only, not DTPA violation, when all the 
representations occurred inside the bounds of the contract); Wayne Duddleston, 
Inc. v. Highland Ins. Co., 110 S.W.3d 85, 92 (Tex. App.—Houston [1st 
Dist.] 2003, pet. denied) (holding alleged misrepresentations stemming from 
failure to comply with policy could not constitute deceptive acts under §17.46(b)(2), 
(5), or (7) of DTPA); see also Ken Pet. Corp. v. Questor Drilling Corp., 
24 S.W.3d 344, 357 (Tex. 2000) (holding indemnity provision of contract was 
merely an agreement and not misrepresentation that agreement conferred rights 
and benefits that it did not have or involve or that are prohibited by law, 
within section 17.46(b)(12)).
        The 
determination of whether a breach of contract may also rise to the level of a 
misrepresentation sufficient to trigger the DTPA is a fact-driven inquiry.  
Cont’l Dredging, Inc., 120 S.W.3d at 389 (citing Munawar v. Cadle 
Co., 2 S.W.3d 12, 18 (Tex. App.—Corpus Christi 1999, pet. denied)).  
We are also mindful that we must liberally construe and comprehensively apply 
the provisions of the DTPA to promote its underlying purpose, which is the 
protection of consumers.  Posey v. S. W. Bell Yellow Pages, Inc., 
878 S.W.2d 275, 281 (Tex. App.—Corpus Christi 1994, no pet.).  
Additionally, we must construe the evidence offered in a light most favorable to 
Head as the nonmovant.  See Munawar, 2 S.W.3d at 19 (summary 
judgment for the defendant disposing of an entire case is proper only if, as a 
matter of law, the plaintiff could not succeed on any of the theories pleaded).
        “Whether 
the facts, once ascertained, constitute a DTPA misrepresentation is a question 
of law.”  Cont’l Dredging, Inc., 120 S.W.3d at 389 (quoting Munawar, 
2 S.W.3d at 18).  Taking into consideration the principles recognized above 
and the summary judgment evidence, as a matter of law, we hold Head’s claim 
that Affordable and Fox made actionable express misrepresentations by the 
promise to furnish an inspection by a licensed real estate inspector and by 
their representation that the inspection complied with the contract is founded 
solely on the breach of contract allegations and is not actionable as a claim of 
misrepresentations under the DTPA.
Failure to Disclose
        Head 
next asserts that she raised an issue of fact as to whether Appellees failed to 
disclose information in violation of section 17.46(b)(24) of the DTPA, which is 
listed as the second exception to the professional services exemption. Tex. Bus. & Com. Code Ann. § 
17.49(c)(2).  In her response, Head claimed that Affordable and Fox failed 
to disclose “Blaeser’s lack of qualifications to perform a roof and attic 
inspection.”  She also argues that Fox knew his failure to personally 
inspect the roof violated the standard of care.  Lastly, she charges that 
Fox knew he failed to provide an inspection report according to the standards of 
his profession, but he failed to communicate this fact to her in order to induce 
her to accept the “Property Condition Report,” which she alleges constitutes 
a failure to disclose information actionable under section 17.46(b)(24).
        Affordable 
and Fox respond that this argument by Head is essentially an argument that they 
failed to disclose how their services were being rendered after entering into 
the transaction.  They argue that the “transaction” in this case was 
the agreement that the parties entered into for the providing of the inspection 
services.  We agree.
        To 
prevail on a claim for failure to disclose, Head must prove four elements: (1) a 
failure to disclose information concerning goods or services, (2) which was 
known at the time of the transaction, (3) if such failure was intended to induce 
the consumer into a transaction, (4) which the consumer would not have entered 
had the information been disclosed.  Tex. 
Bus. & Com. Code Ann. § 17.46(b)(24) (Vernon Supp. 2004-05); Willowbrook 
Foods, Inc. v. Grinnell Corp., 147 S.W.3d 492, 506 (Tex. App.—San Antonio 
2004, pet. filed).
        The 
term “transaction” contemplates an act or acts whereby an alteration of 
legal rights occur.  Doe v. Boys Clubs of Greater Dallas, Inc., 868 
S.W.2d 942, 954 (Tex. App.—Amarillo 1994), aff’d, 907 S.W.2d 472 
(Tex. 1995).  Therefore, according to this rationale, the transaction in 
this instance occurred when Head and Affordable and Fox entered into the written 
agreement for the inspection services, not when the report was provided to her 
after the inspection had been completed.  See id. at 954 (holding 
that grandparent's decision to allow grandchildren to go camping with boys 
club's volunteer worker, who sexually molested grandchildren, was not 
transaction under DTPA, precluding relief on DTPA claim regarding club's alleged 
failure to disclose volunteer's criminal conviction when grandmother called club 
to inquire about volunteer; rather transaction occurred when grandchildren were 
signed up for membership).  Thus, in order to prevail, Head would have to 
show that Affordable and Fox intentionally withheld material information with 
the intent to induce her into the written agreement to inspect the house.  See 
Willowbrook Foods, 147 S.W.3d at 507 (holding that nondisclosure without 
evidence that a defendant had knowledge of the undisclosed information and 
intentionally withheld the information is insufficient to establish a violation 
of the DTPA).
        Head 
has not met this burden.  Although she alleges a failure to disclose 
information, mere nondisclosure of material information is not enough to 
establish an actionable DTPA claim.  Robbins v. Capozzi, 100 S.W.3d 
18, 26 (Tex. App.—Tyler 2002, no pet.); Century 21 Real Estate Corp. v. 
Hometown Real Estate Co., 890 S.W.2d 118, 126 (Tex. App.—Texarkana 1994, 
writ denied).  Head did not produce any evidence that Affordable and Fox 
withheld information with the intent to induce her into the contract.  See 
Rayford v. State, 16 S.W.3d 203, 211 (Tex. App.—Dallas 2000, pet. denied) 
(op. on reh’g) (holding State failed to meet its burden as a matter of law 
when it presented no evidence that failure to disclose information induced any 
consumer into a transaction she would not have entered had she known this 
information).  We therefore hold that Head has not met her burden to 
produce evidence raising a genuine issue of material fact as to her failure to 
disclose claim so as to avoid the professional services exemption.
Unconscionability
        Head 
next contends she raised an issue of fact under the third exception to the 
professional services exemption, to the effect that Affordable and Fox engaged 
in unconscionable conduct that took advantage of her “lack of knowledge to a 
grossly unfair degree.” Tex. Bus. & Com. Code Ann. § 
17.49(c)(3). In her response to the motion for summary judgment, Head argued 
that the “failure of Fox to inspect and/or report obviously defective 
conditions constitutes unconscionability by taking advantage of Ms. Head’s 
lack of knowledge about residential construction to a grossly unfair 
degree.”  Likewise, she alleges on appeal that Appellees made 
affirmations that the inspection was “conducted by a licensed real estate 
inspector when it was not” and that “[a]n inspector then certified the 
structural integrity of a roof and attic which he didn’t even personally 
inspect.”
        The 
DTPA defines an unconscionable action or course of action as “an act or 
practice which, to a consumer’s detriment, takes advantage of the lack of 
knowledge, ability, experience, or capacity of the consumer to a grossly unfair 
degree.”  Id. § 17.45(5) (Vernon 2002).  To prove an 
unconscionable action or course of action, Head must show that Appellees took 
advantage of her lack of knowledge and that the resulting unfairness was 
glaringly noticeable, flagrant, complete, and unmitigated.  Bradford 
v. Vento, 48 S.W.3d 749, 760 (Tex. 2001); Bennett v. Bank United, 
114 S.W.3d 75, 82 (Tex. App.—Austin 2003, no pet.).  The relevant inquiry 
examines the entire transaction, not Appellees’ intent.  Chastain v. 
Koonce, 700 S.W.2d 579, 583 (Tex. 1985); Cooper v. Lyon Fin. Servs., Inc., 
65 S.W.3d 197, 207 (Tex. App.—Houston [14th Dist.] 2001, no pet.).
        Although 
Head makes one conclusory statement that Affordable and Fox took advantage of 
her to a grossly unfair degree, and although she stated in her affidavit that 
she relied on Fox’s statements, she failed to show how her lack of knowledge 
was taken advantage of to a grossly unfair degree.  Head was represented by 
an attorney while engaged in the purchase of the residence.  Head contacted 
Affordable, after receiving a “glowing recommendation” from the realty 
company, to inspect the home. She was not without choice in selecting another 
company.  See Cooper, 65 S.W.3d at 208 (holding supplier of medical 
laser did not engage in unconscionable conduct when, among other things, doctor 
contacted sales representative when he decided to purchase laser and contacted 
another physician who had used same laser).  Furthermore, Head, or persons 
on her behalf, obtained four separate inspections before she purchased the 
residence.
        After 
examining the record, we conclude that Head failed to produce more than a 
scintilla of evidence that any unfairness was “glaringly noticeable, flagrant, 
complete, and unmitigated.” Chastain, 700 S.W.2d at 583.  We 
therefore hold that Head failed to raise a genuine issue of material fact and 
that the trial court did not err in granting summary judgment on her claim of an 
unconscionable act.
Breach of Express Warranty
        Lastly, 
Head states that she pleaded that Affordable and Fox breached an express 
warranty that did not constitute advice, opinion, or judgment and that her claim 
therefore fit within the fourth exception to the professional services bar in 
the DTPA. Tex. Bus. & Com. Code Ann. § 
17.49(c)(4).  Appellees contend that Head failed to plead breach of express 
warranty as a violation of the DTPA.  We disagree. Head expressly pleaded 
DTPA violations by breach of both express and implied warranty in her First 
Amended Original Petition.[8]  And, in her 
response to the motion for summary judgment, Head asserted that Affordable and 
Fox breached express warranties set forth in the inspection agreement that (1) 
“a licensed professional real estate inspector would perform the inspection” 
and (2) “that the inspection would be conducted in accordance with the 
standards of the Texas Real Estate Commission.”  In an excerpt from 
Fox’s deposition attached to Head’s response, Fox acknowledged that he would 
have fallen below his own standard of care by allowing Blaeser to inspect the 
roof unsupervised.  This is some evidence that Affordable and Fox breached 
these warranties by delegating the attic and roof inspection to Blaeser.  
Additionally, expert reports attached to Head’s affidavit provide some 
evidence that some, if not all, of the problematic conditions involving leakage 
and deterioration of the roof were revealed through old patches that pre-existed 
the inspection by Appellees and that those conditions should have been visible 
on the date of the inspection.
        Generally, 
in order to recover for breach of an express warranty under the DTPA, a 
plaintiff must prove that (1) he or she is a consumer, (2) a warranty was made, 
(3) the warranty was breached, and (4) as a result of the breach, an injury 
resulted. U.S. Tire-Tech, Inc. v. Boeran, B.V., 110 S.W.3d 194, 197 (Tex. 
App.—Houston [1st Dist.] 2003, pet. denied).  The DTPA does not define or 
create any warranties.  Parkway Co., 901 S.W.2d at 438.  
Warranties actionable under the DTPA, both express and implied, must first be 
recognized by common law or created by statute.  Id.  
Therefore, we must first determine whether an express warranty was created.
        An 
express warranty is created when a seller makes an affirmation of fact or a 
promise to the purchaser that relates to the sale and warrants a conformity to 
the affirmation as promised.  Humble Nat’l Bank v. DCV, Inc., 933 
S.W.2d 224, 233 (Tex. App.—Houston [14th Dist.] 1996, writ denied).  
Because warranty law has developed mainly in transactions involving goods, we 
may look to the Texas Business and Commerce Code, which concerns express 
warranties and the sale of goods, for guidance.  S. W. Bell Tel. Co. v. 
FDP Corp., 811 S.W.2d 572, 575 (Tex. 1991) (holding that reference to the 
Texas Business and Commerce Code is instructive in service transactions); Humble 
Nat’l Bank, 933 S.W.2d at 233 (holding that in determining when a fact or 
promise becomes part of the basis of the bargain, a court may look to section 
2.313 of the Texas Business and Commerce Code, which concerns express warranties 
and the sale of goods).  As the supreme court recognized in FDP
   
The UCC recognizes that breach of contract and breach of warranty are not the 
same cause of action.  The remedies for breach of contract are set forth in 
section 2.711, and are available to a buyer “[w]here the seller fails to make 
delivery.”  Tex. Bus. & Com. 
Code Ann. § 2.711(a).  The remedies for breach of warranty, 
however, are set forth in section 2.714, and are available to a buyer who has 
finally accepted goods, but discovers that the goods are defective in some 
manner.  Tex. Bus. & Com. Code 
Ann. § 2.714, § 2.711 (Comment 1).
   
FDP, 
811 S.W.2d at 576.
        In 
other words, when a party fails to deliver the goods as promised, a breach of 
contract occurs, but when a seller delivers nonconforming goods, it is a breach 
of warranty.  Ellis v. Precision Engine Rebuilders Inc., 68 S.W.3d 
894, 897 (Tex. App.—Houston [1st Dist.] 2002, no pet.).  Additionally, 
the Code states that “[a]ny affirmation of fact or promise made by the seller 
to the buyer which relates to the goods and becomes part of the basis of the 
bargain creates an express warranty that the goods shall conform to the 
affirmation or promise.” Tex. Bus. & Com. Code Ann. § 
2.313(a)(1) (Vernon 1994).  This warranty has been defined as “any 
representation of fact or promise as to the title, quality, or condition of 
existing or future goods or services.”  Enterprise-Laredo Assoc. v. 
Hachar’s Inc., 839 S.W.2d 822, 830 (Tex. App.—San Antonio), writ 
denied, 843 S.W.2d 476 (Tex. 1992) (per curiam).
        In 
this case, the contract between the parties provided that a “licensed real 
estate inspector” would conduct the inspection.  This was a promise made 
by Affordable and Fox as to the quality of future services to be provided. Head 
has claimed that an apprentice inspector was allowed to inspect the roof without 
supervision and that Fox never personally inspected the roof.  Thus, taking 
Head’s allegations as true, although Head did receive inspection services, 
they arguably did not conform to the quality of the services bargained 
for.  See FDP, 811 S.W.2d at 576 (holding that Southwestern Bell’s 
failure to publish advertisement as agreed to in contract was a defect in 
performance; thus, there was some evidence supporting the jury’s finding that 
this defect constituted a breach of an express warranty).  Therefore, we 
conclude that there is a fact issue as to whether Affordable and Fox breached an 
express warranty that a licensed inspector would perform the inspection in 
conformity with industry standards; as a result, the trial court erred in 
applying the professional services exemption to bar Head’s claim for breach of 
an express warranty.  Because there is a fact issue as to breach of express 
warranty under the DTPA, summary judgment was not proper on this issue.
BREACH OF CONTRACT AND NEGLIGENCE
        Appellant 
next argues that the trial court erred in applying a contractual limitation of 
liability clause to her breach of contract and negligence claims.  The 
trial court found that Affordable and Fox were liable for breach of contract and 
negligence.  However, the trial court found that Head’s damages were 
limited to the contract price of Affordable and Fox’s services, $348.27.  
Head argues that the limitation of liability clause is unconscionable and 
against public policy.
        The 
clause in the agreement states,
  
The customer agrees and understands that the maximum liability incurred by 
Affordable Inspections, Inc. for errors and omissions in the inspection, 
including any liability, of any Inspector, Owner, or Employee of Affordable 
Inspections, Inc., if any, to the Customer shall be limited to the amount of the 
fee paid for the inspection, not to exceed $500.00.
 
        In 
the absence of a controlling public policy to the contrary, contracting parties 
can limit their liability in damages to a specified amount.  Fox Elec. 
Co. v. Tone Guard Sec., Inc., 861 S.W.2d 79, 82-83 (Tex. App.—Fort Worth 
1993, no writ).  In cases examining limitation of liability clauses, the 
courts tend to look to the relationship of the parties and their bargaining 
power.  See Allright, Inc. v. Elledge, 515 S.W.2d 266, 267 (Tex. 
1974) (declaring that in determining whether a contractual agreement limiting 
liability is against public policy, the court looks to the relationship between 
the parties); Arthur’s Garage, Inc. v. Racal-Chubb Sec. Sys., Inc., 997 
S.W.2d 803, 810 (Tex. App.—Dallas 1999, no pet.) (holding that an agreement to 
limit liability will not violate public policy if there is no disparity of 
bargaining power between the parties); D. Calarco v. S. W. Bell Tel. Co., 
725 S.W.2d 304, 307 (Tex. App.—Houston [1st Dist.] 1987, writ ref’d n.r.e.) 
(recognizing that in determining whether a liability limitation provision is 
against public policy, the courts must look to the relationship of the parties), 
overruled on other grounds by Houston Lighting & Power Co. v. Auchan USA, 
Inc., 995 S.W.2d 668 (Tex. 1999).
        When 
deciding whether a contractual provision is unconscionable, a court must 
consider the entire atmosphere in which the agreement was made.  Am. 
Employers’ Ins. Co. v. Aiken, 942 S.W.2d 156, 160 (Tex. App.—Fort Worth 
1997, no writ).  The court must look at the bargaining process the parties 
went through and must evaluate the fairness of a contractual provision in 
controversy by determining whether there are legitimate commercial reasons that 
justify its inclusion as part of the agreement.  Id.
        In 
the present case, the limitation of liability clause was conspicuously set apart 
in the Inspection Agreement, enclosed in a box, and separately initialed by 
Head.  Further, Affordable was not the only home inspection service 
available to Head.  If she was unsatisfied with the limitation of liability 
provision, she was free to choose another inspection service.  She was not 
limited to the contract provided to her by Affordable and Fox.  See D. 
Calarco, 725 S.W.2d at 307 (finding no disparity of bargaining power existed 
when the evidence showed that Southwestern Bell Telephone was not the only 
provider of directory advertising).  Furthermore, Head was represented by a 
board certified real estate attorney who worked with the listing agent on the 
house during the purchase.  Head also obtained other inspections on the 
house during this time.  Based on these facts, we hold that there was no 
disparity in bargaining power in this case.
        There 
are also legitimate commercial reasons for allowing Affordable and Fox to limit 
their liability. In finding policy reasons for upholding such clauses, courts 
examining them in the context of burglar and fire alarm systems have noted that 
in those situations, the customer pays a small fee, and prohibiting the 
limitation of liability could expose an alarm company to significant risks that 
could vary widely depending on the contents of a building.  See 
Racal-Chubb, 997 S.W.2d at 810-11 (discussing the policy reasons for 
upholding the use of liability limitation clauses); Vallance & Co. v. 
DeAnda, 595 S.W.2d 587,590 (Tex. Civ. App.—San Antonio 1980, no pet.) 
(concluding that it would be unreasonable to expect an alarm company to assume 
the responsibilities of a burglary insurance policy upon the payment of a 
minimal fee).  The situation here is analogous.  Head paid a small fee 
for a visual inspection of her home, and prohibiting Affordable from limiting 
liability could subject it to a significant risk of liability.  
Furthermore, without the ability to limit liability, the costs of home 
inspection services would likely increase, which might make this service 
unaffordable for some.  See Racal-Chubb, 997 S.W.2d at 811 (listing 
the potential for increased cost of alarm services as one policy reason for 
limiting liability).  Therefore, the policy reasons in favor of limiting 
liability in the alarm context apply equally as well in this situation.  
Thus, we hold that the limitation of liability clause in the Inspection 
Agreement is not unconscionable.  We therefore overrule Appellant’s 
argument that the trial court erred in applying the limitation of liability 
clause.
ATTORNEYS’ FEES
        In 
her next issue, Head challenges the award of attorneys’ fees in favor of 
Appellees.  In its order granting summary judgment, the trial court awarded 
attorneys’ fees against Head in the amount of $25,861.58 together with 
interest thereon at the rate of ten percent per annum.  Appellees argue 
that the award of attorneys’ fees was proper under the Inspection Agreement, 
which provides that the “Customer agrees to pay all legal expenses . . . as a 
result of any legal action by the Customer where the Customer does not 
prevail.”
        Head 
argues that the contractual term “does not prevail” is ambiguous and must be 
strictly construed against Appellees.  She contends that she did prevail on 
her breach of contract and negligence claims, even though her recovery was 
limited to the amount of the contract.  Appellees contend that Head did not 
“prevail” because she did not obtain substantial damages or recision of the 
transaction.
        Parties 
to a contract may provide by agreement that the prevailing party is entitled to 
recover attorneys’ fees.  G. Richard Goins Constr. Co. v. S.B. 
McLaughlin Assocs., Inc., 930 S.W.2d 124, 130 (Tex. App.—Tyler 1996, writ 
denied).  A prevailing party has been defined as the party “who 
successfully prosecutes the action or successfully defends against it, 
prevailing on the main issue, even though not to the extent of its original 
contention.”  Flagship Hotel, Ltd. v. City of Galveston, 117 
S.W.3d 552, 564 (Tex. App.—Texarkana 2003, pet. denied); City of Amarillo 
v. Glick, 991 S.W.2d 14, 17 (Tex. App.—Amarillo 1997, pet. denied).  
Determination of whether a party is the prevailing or successful party must be 
based upon success on the merits, and not on whether or not damages were 
awarded. Glick, 991 S.W.2d at 17; see also Robbins, 100 S.W.3d at 
27.  In other words, the prevailing party is the one who is vindicated by 
the trial court’s judgment. Glick, 991 S.W.2d at 17.
        Because 
we reverse the summary judgment as to Head’s breach of express warranty claim, 
we hold that neither party has prevailed at this point.  Therefore, we 
reverse the award of attorneys’ fees in favor of Appellees.
CONCLUSION
        We 
affirm the trial court’s summary judgment as to Head’s DTPA claims based 
upon misrepresentation, failure to disclose, and unconscionability, as well as 
on her negligence and breach of contract causes of action.  We reverse the 
summary judgment as to Head’s claim for breach of express warranty as a 
violation of the DTPA, and remand that portion of the case to the trial 
court.  Because we reverse as to Head’s claim for breach of express 
warranty under the DTPA, we likewise reverse the award of attorneys’ fees in 
favor of Affordable and Fox, and remand both claims to the trial court for 
further proceedings in accordance with this opinion.
  
  
                                                          ANNE 
GARDNER
                                                          JUSTICE
 
  
PANEL 
A:   CAYCE, C.J.; GARDNER and MCCOY, JJ.
 
DELIVERED: 
February 24, 2005


NOTES
 
1.  Head obtained several other inspections of the home 
before entering into the contract to purchase.  Prather Engineering 
Consultants conducted an inspection limited to the foundation, according to 
Head, which was reported to be in excellent condition.  Additionally, Mike 
Goodrich contacted Rudy Flores to conduct an inspection to determine the general 
condition of the house.  Flores provided an affidavit stating he met with 
Head at the residence and orally reported to her that the house was in good 
shape, except for some hairline cracks that were visible on the west wall.  
Head states in her affidavit attached to her response to Appellees’ motion for 
summary judgment that Flores did not report any opinion as to the condition of 
the roof.  Blake Wilson, a professional engineer, conducted a structural 
investigation to determine the feasibility of constructing a second story 
addition onto the existing garage.  Head indicates in her affidavit that 
she was not provided Wilson’s report prior to closing.
2.  
On July 7, 2003, the trial court granted summary judgment in favor of the 
Finleys.  Head appealed and this court affirmed.  Head v. Finley, 
No. 2-03-296-CV, 2004 WL 1699895 (Tex. App.—Fort Worth July 29, 2004, pet. 
filed) (mem. op.).
3.  
Specifically, Head alleged that Affordable and Fox engaged in the following 
false, misleading, and deceptive acts under section 17.46(b):
   
(2) causing confusion or misunderstanding as to the source, sponsorship, 
approval, or certification of goods or services;
                . 
. . .
(5) 
representing that goods or services have sponsorship, approval, characteristics, 
ingredients, uses, benefits, or quantities which they do not have or that a 
person has a sponsorship, approval, status, affiliation, or connection which he 
does not;
                . 
. . .
(7) 
representing that goods or services are of a particular standard, quality, or 
grade, or that goods are of a particular style or model, if they are of another;
                . 
. . .
(12) 
representing that an agreement confers or involves rights, remedies, or 
obligations which it does not have or involve, or which are prohibited by law;
                . 
. . .
(24) 
failing to disclose information concerning goods or services which was known at 
the time of the transaction if such failure to disclose such information was 
intended to induce the consumer into a transaction into which the consumer would 
not have entered had the information been disclosed.
   
Tex. Bus. & Com. Code Ann. § 
17.46(b)(2), (5), (7), (12), and (24) (Vernon Supp. 2004-05).
4.  
The DTPA provides that the professional services exemption does not apply to
  
(1) an express misrepresentation of a material fact that cannot be characterized 
as advice, judgment, or opinion;
(2) 
a failure to disclose information in violation of Section 17.46(b)(24);
(3) 
an unconscionable action or course of action that cannot be characterized as 
advice, judgment, or opinion; [or]
(4) 
breach of an express warranty that cannot be characterized as advice, judgment, 
or opinion.
   
Tex. Bus. & Com. Code Ann. § 
17.49(c)(1)-(4).
5.  
Appellees properly pleaded the professional services exemption in their third 
amended answer.  A defendant moving for summary judgment has the burden of 
establishing its affirmative defense as a matter of law.  Randall’s 
Food Mkts., Inc. v. Johnson, 891 S.W.2d 640, 644 (Tex. 1995).  
Appellees moved “on the pleadings” for summary judgment as to all Head’s 
DTPA claims on the basis that Head’s pleadings failed to state causes of 
action for violations of the DTPA because all her claims were for professional 
services.
6.  
See Tex. R. Civ. P. 166a(c) 
(“Issues not expressly presented to the trial court by written motion, answer 
or other response shall not be considered on appeal as grounds for 
reversal.”); Clear Creek Basin, 589 S.W.2d at 677 (explaining that the 
issues required by the rule to be expressly presented are those pointed out to 
the trial court in written motions, written answers, or written responses to the 
motion); Baker v. John Peter Smith Hosp., Inc., 803 S.W.2d 454, 457 (Tex. 
App.—Fort Worth 1991, writ denied) (stating that a nonmovant’s response to a 
motion for summary judgment must present fact issues by means of proper summary 
judgment evidence such as a deposition, admission, or affidavit).
7.  
Head asserted in her response not only that the contract represented that a 
“licensed real estate inspector” would be used but also that, by signing the 
report after the inspection, Fox represented that it had been performed by him 
when, in fact, the inspection was conducted by Blaeser, an apprentice 
inspector.  However, Head admitted in her affidavit that she was present 
during the inspection of the roof and attic and “watched as Mr. Fox allowed 
Mr. Blaeser to perform this part of the inspection.  Mr. Fox did not 
attempt to enter the attic space nor did he climb onto the roof.”
8.  
Head also argues on appeal that Affordable and Fox did not address her 
common-law breach of express warranty claim in their motion for summary judgment 
and therefore, the trial court erred in granting summary judgment on this 
claim.  However, Head did not plead common-law breach of express warranty, 
outside of the DTPA, until her “Second Amended Original Petition.”  The 
trial court specifically stated in its “Order Granting Summary Judgment” 
that it did not consider this pleading.  Therefore, the only claim of 
breach of express warranty at the time of summary judgment was brought through 
the DTPA.  Additionally, in her response to the motion for summary 
judgment, Head argued solely that her breach of express warranty claim fell 
within the exceptions to the professional services exemption under the 
DTPA.  Therefore, although we recognize that the DTPA does not create 
warranties, our opinion will only address Head’s breach of express warranty 
claim in the context of the DTPA.  See Parkway Co. v. Woodruff, 901 
S.W.2d 434, 438 (Tex. 1995) (holding that warranties actionable under the DTPA, 
both express and implied, must first be recognized by common law or created by 
statute).